1  TERESA R. TRACY, ESQ. (SBN 89609)
   Email: ttracy@gladstonemichel.com
2  JOLINA A. ABRENA, ESQ. (SBN 198683)
   Email: jabrena@gladstonemichel.com
3  GLADSTONE MICHEL
   WEISBERG WILLNER & SLOANE, ALC
4  4551 Glencoe Avenue, Suite 300
   Marina del Rey, CA 90292-7925
5  Tel: (310) 821-9000 • Fax: (310) 775-8775

6  Attorneys for Defendant
   AIRCRAFT SERVICE INTERNATIONAL, INC.
7

FILED
CLERK, U.S. DISTRICT COURT

MAR 14 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  MARIAN ZAWADA,                    CASE NO. CV 13-01846-FMO (AJW)

12                  Plaintiff,        DEFENDANT AIRCRAFT SERVICE
                                      INTERNATIONAL, INC.'S NOTICE
13  vs.                               OF REMOVAL

14  AIRCRAFT SERVICE                  [DIVERSITY]
    INTERNATIONAL, INC., a
15  Delaware corporation;             (Los Angeles Superior Court Case No.
    DAVID BANNISTER, an               BC500672)
16  individual; and DOES 1 through
    250, inclusive,                   *(Filed concurrently: Declarations of
17                                    Joseph I. Goldstein and Teresa R. Tracy
                    Defendants.       in Support of Removal)*
18
                                      Date Action Filed: February 7, 2013
19                                    Trial Date:        None Set

20

21        TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL

22  DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND TO HIS

23  ATTORNEYS OF RECORD:

24        PLEASE TAKE NOTICE that Defendant AIRCRAFT SERVICE

25  INTERNATIONAL, INC. ("ASII") removes the above-referenced action from the

26  Superior Court of the State of California for the County of Los Angeles to the

27  United States District Court for the Central District of California.

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57414 20130306 Notice of Removal-r4.docx                1

This removal is based on 28 U.S.C. §§ 1441 and 1446, and is specifically based on the existence of diversity citizenship of the parties.

## I.    BACKGROUND

1.    On February 7, 2013, Marian Zawada ("Plaintiff") filed with the Los Angeles County Superior Court – Central Justice Center, an unverified complaint for damages against Aircraft Service International, Inc. ("ASII"), and David Bannister (the "Complaint"), Case No. BC500672.  Plaintiff's Complaint alleges claims for wrongful termination in violation of public policy, retaliation in violation of California's Fair Employment and Housing Act, intentional infliction of emotional distress, discrimination on the basis of disability, failure to accommodate disability, failure to engage in the interactive process, and hostile work environment harassment based on age and national origin.

2.    True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Civil Case Cover Sheet Addendum are attached hereto as Exhibit "1" pursuant to 28 U.S.C § 1446(a).  These documents constitute all process and pleadings served on Defendant ASII in this action.  To Defendant ASII's knowledge, no further process and pleadings related to this case have been served by Plaintiff.

## II.    TIMELINESS OF REMOVAL

3.    The Complaint was served on ASII on February 12, 2013. (Declaration of Joseph I. Goldstein, Esq. in Support of Defendant Aircraft Service International, Inc.'s Removal to Federal Court ("Goldstein Decl."), ¶ 5; Declaration of Teresa R. Tracy in Support of Defendant Aircraft Service International, Inc.'s Removal to Federal Court ("Tracy Decl."), ¶ 4 and Exhibit 2 to Tracy Decl.).  This Notice of Removal is timely as it is filed within 30 days of the date the Complaint was served on ASII.  28 U.S.C. § 1446(b).

NOTICE OF REMOVAL

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

## III.   DIVERSITY JURISDICTION

4.     Removal is proper because this action is a civil action where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.  Defendants ASII and David Bannister are not citizens of the State of California, where this action is currently pending, and thus there is complete diversity between the parties.

## IV.   DIVERSITY OF CITIZENSHIP

5.     To establish citizenship for diversity purposes, a natural person must be both a citizen of the United States and a domiciliary of a particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).

6.     *Plaintiff's Citizenship.*   Plaintiff is and was, at all relevant times when this action was filed and at the time of its removal, a resident of Los Angeles County and a citizen of the State of California. (Exhibit 1, Complaint, ¶ 5.)  All of the alleged conduct complained of in this action took place in Los Angeles County, California. (Exhibit 1, Complaint, ¶¶ 3-4; Goldstein Decl., ¶ 6).

7.     *Defendant ASII's Citizenship.*  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  The appropriate test to determine a corporation's principal place of business is the "nerve center" test. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  Under the "nerve center" test, the principal place of business is the state where the corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters.

8.     Defendant ASII is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware, with its principal place of business located at 201 S. Orange Ave., Suite 1100, Orlando, Florida 32801. Defendant ASII's principal place of business is Florida because Orlando, Florida is

the site of ASII's "national office" for purpose of performing executive functions. ASII's executive operations are managed from this location, including but not limited to, those operations relating to administering company-wide policies and procedures, legal affairs, and general operations of its business. (Goldstein Decl., ¶¶ 3-4). Since ASII's "nerve center" is Florida, its principal place of business is Florida. *Smith v. Ashland, Inc.*, 250 F.3d 1167, 1172 (8th Cir. 2001)(holding that for diversity purposes, a corporation is a citizen of its state of incorporation and state where its principal place of business is located).

9.    *Defendant David Bannister's Citizenship*.  To ASII's knowledge, David Bannister has not been served as of the date of this removal.  Also, to ASII's knowledge, David Bannister is living in and is a resident of the state of Virginia as of the dates of the filing of this action and the removal of this action to federal court.  (Goldstein Decl., ¶ 8).

10.    No other party has been named as of the date of this removal.

11.    *Doe Defendants*.  Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1322.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980)(unnamed defendants are not required to join removal petition).  Thus, the existence of Doe defendants one through two hundred fifty, inclusive, does not deprive this court of jurisdiction.

**V.    VENUE**

12.    This action was originally brought in the Superior Court of the State of California, County of Los Angeles.  (Exhibit 1).

13.    Venue lies in the Central District of this Court because it is the district court where the state court action is pending. See 28 U.S.C. §§ 84(c), 1391(b), 1441(a), 1446(a).

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

**NOTICE OF REMOVAL**

## VI.    STATUS OF THE PLEADINGS

14.    This lawsuit arises out of Plaintiff's employment with ASII.  On February 7, 2013, Plaintiff filed the Complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Marian Zawada v. Aircraft Service International, Inc., David Bannister, and Does 1 through 250,* Case No. BC500672.  (Exhibit 1).

15.    Plaintiff's Complaint alleges claims for wrongful termination in violation of public policy, retaliation in violation of California's Fair Employment and Housing Act, intentional infliction of emotional distress, discrimination on the basis of disability, failure to accommodate disability, failure to engage in the interactive process, and hostile work environment harassment based on age and national origin.  (Exhibit 1).

16.    True and correct copies of all documents filed with the Superior Court of the County of Los Angeles are attached as Exhibits 1 and 2 pursuant to 28 U.S.C. § 1446(a).  (Exhibits 1, 2).

17.    To Defendant ASII's knowledge, no other pleadings, process or orders related to this case have been filed with the Superior Court for the County of Los Angeles.

## VII.    NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

18.    Contemporaneously with the filing of this Notice of Removal in this court, written notice of the removal will be given to Plaintiff's counsel of record, Ronald L. Zambrano, Esq., Gary R. Carlin, Esq., and Brent S. Buchsbaum, Esq., with the LAW OFFICES OF CARLIN & BUCHSBAUM, LLP.  (Exhibit 3).

19.    A copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California in and for the County of Los Angeles, as required by 28 U.S.C. § 1446(d).

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57414 20130306 Notice of Removal-r4.docx                                 5

**NOTICE OF REMOVAL**

## VIII. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

20.    Defendant only needs to show by a preponderance of the evidence (that it is more probable than not) that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996). Here, the Court can reasonably ascertain from Plaintiff's Complaint and his prayer for relief that the amount in controversy exceeds $75,000. See, *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)("The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy.")

21.    Plaintiff seeks compensatory damages, including general damages, special damages, interest, and other compensatory damages for emotional distress and other economic losses. (Exhibit 1, Complaint, Prayer for Relief, ¶ 1 (compensatory), ¶ 3 (general), ¶ 4 (special).) See, *Smith v. Brown-Forman Distillers Corp.*, 196 Cal.App.3d 503, 518 (1989)(front pay until mandatory retirement age reached); *Rabago-Alvarez v. Dart Indus.*, 55 Cal.App.3d 91, 97 (1976)(four years); *Drzewiecki v. H & R Block, Inc.,* 24 Cal.App.3d 695, 705-706 (1972)(ten years). Plaintiff's final compensation was $109,132.80 per year, not including benefits. (Goldstein Decl., ¶ 7.) His employment was terminated on February 9, 2012 (Exhibit 1, Complaint, ¶ 14; Goldstein Decl., ¶ 7), thus Plaintiff is seeking approximately one year's salary in front pay. Based on his compensation alone (i.e., without benefits), Plaintiff is thus seeking at least $109,132.80 in lost wages through March 9, 2013. If the matter goes to trial, he will almost assuredly seek lost wages through the date of the verdict. Thus, this alone establishes that the amount in controversy is well in excess of the amount needed for diversity jurisdiction.

22.    Plaintiff also seeks an award of reasonable attorneys' fees under the FEHA. (Exhibit 1, Complaint, Prayer for Relief, ¶ 6.) It is well-settled that when

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

1   authorized by statute, attorneys' fees are to be included in the calculation of the

2   amount of Plaintiff's claims for purposes of determining whether the requisite

3   jurisdictional minimum is met. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156

4   (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys'

5   fees, either with mandatory or discretionary language, such fees may be include in

6   the amount in controversy"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d

7   1004, 1010-1011 (N.D. Cal. 2002)(in deciding amount in controversy issue, court

8   may estimate the amount of reasonable attorneys' fees like to be recovered by

9   plaintiff if she were to prevail). Plaintiff may recover attorneys' fees for her

10  discrimination causes of action because the FEHA authorizes an award of

11  reasonable attorneys' fees to a prevailing plaintiff. Cal. Gov. Code, §12965(b);

12  Cal. Lab. Code, §§ 218.5, 218.6, 2802.   While Plaintiff's attorneys' fees cannot be

13  precisely calculated, it is reasonable to assume that they could exceed a damages

14  award. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (C.D. Cal. 2002).

15  For example, in *Alamo v. Practice Mgt. Information Corp.*, Case No. B230909 (2d

16  Dist., Div. 7, Sept. 24, 2012)(unpublished)(attached as Exhibit 4), the court

17  awarded attorney's fees of $50,858.44 to a successful plaintiff in a discrimination

18  case brought under the Fair Employment and Housing Act involving a leave of

19  absence, although the compensatory damages were only $10,000. Similarly, in

20  *Rodriguez v. California Dept. of Justice*, Case No. C064756 (3d Dist., Jan. 31,

21  2012)(unpublished)(attached as Exhibit 5), the court affirmed an award of

22  attorney's fees of $560,709 (and affirmed a 1.5 fee multiplier) to a successful

23  plaintiff in a discrimination case brought under the Fair Employment and Housing

24  Act, which was almost equal to the damages award of $560,709.

25       23.    Thus, assuming a modest 25% of the lost wages to date, it is not

26  unreasonable to assume that an attorney's fee award would be at least $27,283.20

27  ($109,132.80 x .25).

28       24.    Plaintiff also seeks punitive damages. (Exhibit 1, Complaint, Prayer

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57414 20130306 Notice of Removal-r4.docx                7

NOTICE OF REMOVAL

1    for Relief, ¶5.)  The Court must take into account punitive damages for purposes of

2    determining the amount in controversy where such damages are recoverable under

3    state law.  *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785,

4    787 (9th Cir. 1963); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d at 1009.

5    California law does not provide any specific monetary limit on the amount of

6    punitive damages that may be awarded under California Civil Code section 3294.

7    *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994).  In *Aucina*

8    *v. Amoco Oil, Co.*, 871 F.Supp. 332 (S.D. Iowa 1994), the defendant employer

9    established that the amount in controversy exceeded the jurisdictional minimum in

10    a discrimination and wrongful discharge lawsuit where the former employee

11    asserted claims for lost wages, lost benefits, mental anguish, and punitive damages.

12    The court noted that "[b]ecause the purpose of punitive damages is to capture a

13    defendant's attention and deter others from similar conduct," the plaintiff's claim

14    for punitive damages "might alone" exceed the jurisdictional minimum.  *Id.* at 334.

15    Although Defendant ASII vigorously denies Plaintiff's allegations, if Plaintiff were

16    to prevail on his punitive damages claim, that claim alone could exceed the

17    jurisdictional minimum.

18         25.    Plaintiff also seeks such open-ended relief, i.e., "such other and

19    further relief as the Court may deem proper."  (Exhibit 1, Complaint, Prayer for

20    Relief, ¶ 7.)  Although uncertain in amount, this additional damages claim only

21    serves to increase the amount in controversy.  See, *Lewis v. Exxon Mobil Corp.*,

22    348 F.Supp.2d 932, 934 (W.D. Tenn. 2004)(the "open ended" relief sought by

23    plaintiff, who prayed for "judgment to be determined by a jury, for all incidental,

24    consequential, compensatory and punitive damages" established that her case met

25    the amount in controversy requirement even though she plead in the complaint that

26    she did not assert a claim in excess of $75,000.)

27         26.    On March 7, 2013, Ms. Tracy on behalf of Defendant ASII sent Mr.

28    Zambrano a letter in which she asked him to stipulate, on each of the causes of

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57414 20130306 Notice of Removal-r4.docx                8

NOTICE OF REMOVAL

1  action in the Complaint, as well as cumulatively on the entirety of the Complaint,

2  that the damages sought were equal to or less than $75,000.00.  As of the filing of

3  this removal, Mr. Zambrano has not agreed that the damages sought are equal to or

4  less than $75,000.00.  (Tracy Decl., ¶ 3 and Exhibit 1 to Tracy Decl.).

5       27.  In sum, although Defendant ASII does not concede Plaintiff's claims

6  have any merit, when the relief sought by Plaintiff is taken as a whole, the amount

7  in controversy for Plaintiff's claims more likely than not exceeds the $75,000

8  jurisdiction requirement, exclusive of interest and costs.  Thus, the Court has

9  original jurisdiction over the claims asserted by Plaintiff in this action based on

10  diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

11  **IX.  CONCLUSION**

12       WHEREFORE, Defendant ASII requests that the above action pending

13  before the Superior Court of the State of California for the County of Los Angeles

14  be removed to the United States District Court for the Central District of

15  California.

16

17  DATED: March 14, 2013         GLADSTONE MICHEL

18                    WEISBERG WILLNER & SLOANE, ALC

19

20                    By:

21                    TERESA R. TRACY

22                    JOLINA A. ABRENA
                  Attorneys for Defendant
                  AIRCRAFT SERVICE INTERNATIONAL,
                  INC.

23

24

25

26

27

28

57414 20130306 Notice of Removal-r4.docx        9

**NOTICE OF REMOVAL**

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

**EXHIBIT 1**

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):* AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; DAVID BANNISTER, an individual; and DOES 1 through 250, inclusive,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 7 2013

JOHN A. CLARKE, CLERK

BY MARY FLORES, DEPUTY

**YOU ARE BEING SUED BY PLAINTIFF:** MARIAN ZAWADA
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Los Angeles Superior Court<br>111 North Hill Street<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER<br>*(Número del Caso):* BC 500 672 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ronald L. Zambrano, CSBN: 255613    (562)432-8933    (562)435-1656
Law Offices of Carlin & Buchsbaum, LLP
555 East Ocean Blvd., Suite 818
Long Beach, California 90802

| DATE:<br>*(Fecha)* FEB 7 2013 JOHN A. CLARKE | Clerk, by<br>*(Secretario)* Mary Flores | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**Exhibit 1 Page 10**

ORIGINAL

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>GARY R. CARLIN<br>555 EAST OCEAN BLVD.<br>SUITE 818<br>LONG BEACH, CA 90802<br>*Telephone No:* 562 432-8933 | *For Court Use Only*<br><br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES<br><br>FEB 20 2013 |

*Attorney for:* Plaintiff          *Ref. No. or File No.:*

*Insert name of Court, and Judicial District and Branch Court:*
LOS ANGELES SUPERIOR COURT CENTRAL

*Plaintiff:* ZAWADA
*Defendant:* AIRCRAFT SERVICE

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
         Raul Sanchez

| PROOF OF SERVICE<br>SUMMONS & COMPLAINT | *Hearing Date:* | *Time:* | *Dept/Div:*<br>54 | *Case Number:*<br>BC500672 |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS AND COMPLAINT; CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION, CIVIL CASE COVER SHEET, NOTICE OF CASE ASSIGNMENT, ADR, VOLUNTARY EFFICIENT LITIGATION STIPULATION, RIGHT TO SUE LETTERS

3. a. *Party served:*          AIRCRAFT SERVICE INTERNATIONAL, INC., A DELAWARE
                              CORPORATION
   b. *Person served:*        MARIA SANCHEZ, AUTHORIZED TO ACCEPT SERVICE

4. *Address where the party was served:*    CT CORPORATION
                                            818 W. 7TH ST.
                                            LOS ANGELES, CA 90017

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Tue., Feb. 12, 2013 (2) at: 1:30PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of:  AIRCRAFT SERVICE INTERNATIONAL, INC., A DELAWARE CORPORATION
   Under CCP 416.10 (corporation)

7. *Person Who Served Papers:*
   a. JEFFREY J. CORZINE
   b. A & M ATTORNEY SERVICE, INC.
      P.O. BOX 7881
      LONG BEACH, CA 90807
   c. 562 426-8306

   Recoverable Cost Per CCP 1033.5(a)(4)(B)
   d. *The Fee for Service was:*  $41.50
   e. I am: (3) registered California process server
       (i)  Owner
       (ii) *Registration No.:*    503-C
       (iii) *County:*             Los Angeles

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   Date:
       Fri, Feb. 15, 2013

Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE
SUMMONS & COMPLAINT

(JEFFREY J. CORZINE)

carli.82187

**Exhibit 1 Page 11**

1    **LAW OFFICES OF CARLIN & BUCHSBAUM, LLP**
     GARY R. CARLIN, CSBN: 44945
2    BRENT S. BUCHSBAUM, CSBN: 194816
     LAUREL N. HAAG, CSBN: 211279
3    555 East Ocean Blvd., Suite 818
     RONALD L. ZAMBRANO, CSBN: 255613
4       ronald@carlinbuchsbaum.com
     Long Beach, California 90802
5    Telephone: (562)432-8933; Facsimile: (562)435-1656

6    Attorneys for Plaintiff,
     MARIAN ZAWADA

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         FOR THE COUNTY OF LOS ANGELES - CENTRAL JUSTICE CENTER

10

11   MARIAN ZAWADA,                    CASE NO.    BC 5 0 0 6 7 2

12        Plaintiff,
                                       **COMPLAINT FOR DAMAGES**
13        vs.
                                       (1) WRONGFUL TERMINATION IN
14   AIRCRAFT SERVICE INTERNATIONAL,       VIOLATION OF PUBLIC POLICY;
     INC., a Delaware corporation; DAVID
15   BANNISTER, an individual; and DOES 1  (2) RETALIATION IN VIOLATION OF FEHA;
     through 250, inclusive,
16                                     (3) INTENTIONAL INFLICTION OF
          Defendants.                      EMOTIONAL DISTRESS;
17
                                       (4) DISCRIMINATION ON THE BASIS
18                                         OF DISABILITY;

19                                     (5) FAILURE TO ACCOMMODATE
                                           DISABILITY;
20
                                       (6) FAILURE TO ENGAGE IN INTERACTIVE
21                                         PROCESS; AND

22                                     (7) HOSTILE WORK ENVIRONMENT
                                           HARASSMENT BASED ON AGE & NATIONAL
23                                         ORIGIN

24

25                                     [DEMAND FOR JURY TRIAL]

26        COMES NOW the Plaintiff, MARIAN ZAWADA, (who hereinafter shall be referred

27   as the "Plaintiff" or as "ZAWADA"), who hereby respectfully alleges, avers, and

28   complains, as follows:

                     MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                      -1-

Exhibit 1 Page 12

## INTRODUCTION

1.  This is an action brought by the Plaintiff, MARIAN ZAWADA, pursuant to California statutory, decisional, and regulatory laws.  Plaintiff was an employee of Defendants AIRCRAFT SERVICE INTERNATIONAL, INC. (hereinafter referred to as "ASI"), at all times herein mentioned.

2.  Plaintiff alleges that California statutory, decisional, and regulatory laws prohibit the conduct by Defendants herein alleged, and therefore Plaintiff has an entitlement to monetary relief on the basis that Defendants violated such statutes, decisional law, and regulations.

## JURISDICTION AND VENUE

3.  Jurisdiction is proper in this court by virtue of the California statutes, decisional law, and regulations, and the local rules under the Los Angeles County Superior Court Rules, including those related to wrongful termination.

4.  Venue in this Court is proper in that ASI has a principal business address located in the City of Los Angeles, County of Los Angeles, State of California.

## PARTIES

5.  At all times herein mentioned, Plaintiff ZAWADA is and has been a resident of Los Angeles County, State of California.

6.  Defendant ASI is and at all times herein mentioned has been a Delaware corporation with the capacity to sue and to be sued, and doing business, with a principal place of business

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                    -2-

**Exhibit 1 Page 13**

1    located at 5720 Avion Drive, Los Angeles, California 90045.

2

3    7.    Defendant DAVID BANNISTER is and at all times herein mentioned has been a

4    Manager at ASI, and is, upon information and belief a resident of the County of Los

5    Angeles, State of California.

6

7    8.    Plaintiff is informed and believes and thereon alleges that each of the Defendants herein

8    were at all times the agent, employee, or representative of each remaining Defendant and

9    were at all times herein acting within and outside the scope and purpose of said agency

10   and employment. Plaintiff further alleges that as to each Defendant, whether named, or

11   referred to as a fictitious name, said Defendants supervised, ratified, controlled,

12   acquiesced in, adopted, directed, substantially participated in, and/or approved the acts,

13   errors, or omissions, of each remaining Defendant.

14

15   9.    The true names and capacities of the Defendants named herein as DOES 1 through 250,

16   inclusive, whether individual, corporate, partnership, association, or otherwise, are

17   unknown to Plaintiff who therefore sues these Defendants by such fictitious names.

18   Plaintiff will request leave of court to amend this Complaint to allege their true names

19   and capacities at such time as they are ascertained.

20

21                              FACTUAL ALLEGATIONS

22

23   10.   Plaintiff is a disabled male and a Polish-born American citizen of approximately 57 years

24   of age. On October 19, 2009, Plaintiff began working for ASI.

25

26   11.   Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked

27   on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-

28   workers because of Plaintiff's age and due to his Polish heritage/background. Plaintiff

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -3-

Exhibit 1 Page 14

1    complained about the harassment to BANNISTER, to no avail. In fact, the harassment of

2    Plaintiff due to his age and Polish background only got worse.

3

4    12.   On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress

5          leave, directly derived from the aforementioned harassment, through February 1, 2012.

6

7    13.   On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical

8          leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor

9          faxed the note extending the medical leave to ASI. In addition, Plaintiff himself hand-

10         delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

11

12   14.   On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following

13         pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond

14         the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff

15         is informed and believes his termination was in fact due to his having taken a stress leave,

16         complaining about work related stress caused by BANNISTER; harassment of which was

17         based on Plaintiff's age and Polish heritage/background.

18

19   15.   Prior to filing this Complaint, Plaintiff fulfilled any legal requirement or exhausted any

20         administrative remedy imposed on him by having filed the substance of claims alleged

21         herein with the California Department of Fair Employment and Housing (hereinafter

22         "DFEH"), and has received Right to Sue Letters from the DFEH. Plaintiff has therefore

23         substantially complied with all requirements for the filing of this Complaint and has

24         exhausted his administrative remedies prior to filing, commencing, and serving the within

25         action.

26   //

27   //

28   //

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -4-

Exhibit 1 Page 15

## FIRST CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

### (ZAWADA Against Defendants ASI and DOES 1 through 250)

16.    The allegations of paragraphs 1 through 15 are re-alleged and incorporated herein by reference as though set forth at length.

17.    At all times herein mentioned in this complaint, California Government Code Section 12940 et seq. was in full force and effect and was binding on the Defendants and the Defendants were subject to their terms, and therefore Defendant was required to refrain from violations of public policy, including discriminatory and/or retaliatory actions against Plaintiff on account of his disability, as alleged in more detail above.

18.    Plaintiff performed competently and capably during his employment with ASI. Nevertheless, Plaintiff was wrongfully terminated by Defendants, and each of them, because of his protected activity.

19.    Plaintiff is a disabled male and a Polish-born American citizen of approximately 57 years of age.  On October 19, 2009, Plaintiff began working for ASI.

20.    Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-workers because of Plaintiff's age and due to his Polish heritage/background.  Plaintiff complained about the harassment to BANNISTER, to no avail.  In fact, the harassment of Plaintiff due to his age and Polish background only got worse.

21.    On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress leave, directly derived from the aforementioned harassment, through February 1, 2012.

Exhibit 1 Page 16

22. On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor faxed the note extending the medical leave to ASI. In addition. Plaintiff himself hand-delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

23. On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff is informed and believes his termination was in fact due to his having taken a stress leave, complaining about work related stress caused by BANNISTER; harassment of which was based on Plaintiff's age and Polish heritage/background.

24. Defendants' above described conduct is in violation of various statutes and the decisional law of this state and country, including but not limited to California Government Code Section 12940 et seq.

25. As a direct and legal result of Defendants' discrimination and retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, *physical injuries, physical sickness*, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

26. Said termination was wrongful and justifies the imposition of punitive damages since the termination was against public policy. Defendants intentionally discriminated against Plaintiff on account of his protected activity and classification, and in doing so, Defendants acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Based upon the foregoing, Plaintiff is entitled to recover punitive

Exhibit 1 Page 17

damages from Defendants and each of them, in an amount according to proof.

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of FEHA)

### (ZAWADA Against Defendants ASI and DOES 1 through 250)

27. The allegations of paragraphs 1 through 26 are re-alleged and incorporated herein by reference as though fully set forth herein.

28. At all times herein mentioned in this complaint, California Government Code Section 12940 et seq., was in full force and effect and binding on the Defendants and the Defendants were subject to its terms. Defendants wrongfully terminated Plaintiff for reasons and in a manner contrary to public policy, on a pre-textual basis, because of his disability, his age, his national origin, and because he took a disability leave and/or because he complained about workplace stress caused by harassment on the basis of Plaintiff's age and national origina, as herein alleged.

29. Plaintiff began to suffer from workplace stress, anxiety and depression as a result harassment directed at him by BANNISTER and other co-workers because of Plaintiff's age and Polish heritage.

30. Plaintiff is a disabled male and a Polish-born American citizen of approximately 57 years of age. On October 19, 2009, Plaintiff began working for ASI.

31. Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-workers because of Plaintiff's age and due to his Polish heritage/background. Plaintiff complained about the harassment to BANNISTER, to no avail. In fact, the harassment of

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -7-

Exhibit 1 Page 18

1    Plaintiff due to his age and Polish background only got worse.

2

3    32.    On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress

4           leave, directly derived from the aforementioned harassment, through February 1, 2012.

5

6    33.    On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical

7           leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor

8           faxed the note extending the medical leave to ASI. In addition. Plaintiff himself hand-

9           delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

10

11   34.    On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following

12          pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond

13          the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff

14          is informed and believes his termination was in fact in retaliation for his having taken a

15          stress leave, complaining about work related stress caused by BANNISTER and other co-

16          workers, which was based on Plaintiff's age and Polish heritage/background.

17

18   35.    Said retaliation was in violation of public policy because the actual reason for terminating

19          Plaintiff was that Plaintiff informed Defendants of his disability (work related stress), for

20          complaining about the aforementioned harassment and for taking a medical leave.

21

22   36.    Defendants' conduct above described is in violation of various statutes and state law

23          decisions, including California Government Code Section 12940 et seq.

24

25   37.    As a direct and legal result of Defendants' retaliatory actions against Plaintiff for his

26          protected activity herein referenced, Plaintiff has suffered and continues to suffer general,

27          consequential, and special damages, including but not limited to substantial losses in

28          earnings, other employment benefits, *physical injuries, physical sickness*, as well as

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -8-

**Exhibit 1 Page 19**

1   emotional distress, plus medical expenses, future medical expenses, and attorneys' fees,

2   all to his damage in an amount according to proof.

3

4   38.   Said retaliation was wrongful and justifies the imposition of punitive damages since it

5   was against public policy.  Defendants intentionally retaliated against Plaintiff on account

6   of his complaints of public policy violations, including discrimination on the basis of

7   disability, and in doing so, Defendants acted maliciously, fraudulently and oppressively,

8   with the wrongful intention of injuring Plaintiff.  Based upon the foregoing, Plaintiff is

9   entitled to recover punitive damages from Defendants and each of them, in an amount

10  according to proof.

11

12  **THIRD CAUSE OF ACTION**

13  **(Intentional Infliction of Emotional Distress)**

14  **(ZAWADA Against ASI, BANNISTER and DOES 1 through 250)**

15

16  39.   The allegations of paragraphs 1 through 38 are re-alleged and incorporated herein by

17  reference as though fully set forth herein.

18

19  40.   Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked

20  on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-

21  workers because of Plaintiff's age and due to his Polish heritage/background.  Plaintiff

22  complained about the harassment to BANNISTER, to no avail.  In fact, the harassment of

23  Plaintiff due to his age and Polish background only got worse.

24

25  41.   On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress

26  leave, directly derived from the aforementioned harassment, through February 1, 2012.

27  //

28  //

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                        -9-

**Exhibit 1 Page 20**

42. On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor faxed the note extending the medical leave to ASI. In addition. Plaintiff himself hand-delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

43. On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff is informed and believes his termination was in fact in retaliation for his having taken a stress leave, complaining about work related stress caused by BANNISTER; harassment of which was based on Plaintiff's age and Polish heritage/background.

44. Defendants' conduct of, including but not limited to, subjecting Plaintiff to discrimination on the basis of disability and also to retaliation against Plaintiff for complaining to management about discrimination and workplace stress and for taking a protected disability leave, which resulted in his termination, none of which are a normal part of an employment relationship, constitutes extreme and outrageous conduct, as described in more detail *above*.

45. As a proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, anxiety, pain and suffering, physical injuries, physical sickness, medical expenses, future medical expenses, attorneys' fees, and other damages to be determined at trial according to proof.

46. Said conduct was wrongful and justifies the imposition of punitive damages. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intentions of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights. Based upon the foregoing,

Exhibit 1 Page 21

1    Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an

2    amount according to proof.

3

4                              **FOURTH CAUSE OF ACTION**

5                                **(Disability Discrimination)**

6              **(ZAWADA Against Defendants ASI and DOES 1 through 250)**

7

8    47.   The allegations of paragraphs 1 through 48 are re-alleged and incorporated herein by

9          reference as though fully set forth herein.

10

11   48.   Defendant ASI is a business entity regularly employing at least the minimum number of

12         employees upon which certain legal duties and obligations arise under various laws and

13         statutes, including the Fair Employment and Housing Act.  At all times herein mentioned

14         in this complaint, Government Code §12940, Government Code §12926.1 were in full

15         force and effect and were binding on the Defendants and the Defendants were subject to

16         their terms.

17

18   49.   Plaintiff is, and at all times herein mentioned was, an "employee" who suffers or suffered

19         from a "disability" as defined by Government Code §§12926, et seq. and §12940 et seq.

20         and California Code of Regulations, Title 2, which limits one or more major life

21         activities.

22

23   50.   Plaintiff timely filed a complaint of discrimination with the Department of Fair

24         Employment and Housing alleging *inter alia* violations of Government Code §12940,

25         including, but not limited to §12940(a), (m), and (n), and all other applicable provisions,

26         fully exhausting Plaintiff's administrative remedies, and has been issued a Right to Sue

27         Letter, conferring jurisdiction on this court over these claims.

28   //

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -11-

Exhibit 1 Page 22

51.    At all times herein mentioned, Plaintiff was fully qualified and competent to perform the duties of his position. At all relevant times herein mentioned: Plaintiff suffered from a workplace stress, depression, and anxiety caused by work place harassment on account of Plaintiff's age and Polish background.

52.    Plaintiff informed Defendants of his workplace stress, anxiety and harassment during his employment. Following that, the harassment by BANNISTER escalated.

53.    Plaintiff is a disabled male and a Polish-born American citizen of approximately 57 years of age. On October 19, 2009, Plaintiff began working for ASI.

54.    Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-workers because of Plaintiff's age and due to his Polish heritage/background. Plaintiff complained about the harassment to BANNISTER, to no avail. In fact, the harassment of Plaintiff due to his age and Polish background only got worse.

55.    On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress leave, directly derived from the aforementioned harassment, through February 1, 2012.

56.    On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor faxed the note extending the medical leave to ASI. In addition, Plaintiff himself hand-delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

57.    On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff

1    is informed and believes his termination was in fact in retaliation for his having taken a

2    stress leave, complaining about work related stress caused by BANNISTER; harassment

3    of which was based on Plaintiff's age and Polish heritage/background.

4

5    58.    Plaintiff is informed and believes and thereon alleges that with reasonable

6        accommodations (i.e., not being fired prior to being released to work at an expected date),

7        he could have fully performed all duties and functions of his job in an adequate,

8        satisfactory and/or outstanding manner.

9

10    59.    As a direct and legal result of Defendants' discrimination and retaliatory actions against

11        Plaintiff for his complaints and/or protected activity herein referenced, Plaintiff has

12        suffered and continues to suffer general, consequential, and special damages, including

13        but not limited to substantial losses in earnings, other employment benefits, *physical

14        injuries, physical sickness*, as well as emotional distress, plus medical expenses, future

15        medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

16

17    60.    Said discrimination and/or refusal to accommodate/engage in interactive process was

18        wrongful and justifies the imposition of punitive damages since the termination was

19        against public policy. Defendants intentionally discriminated against Plaintiff on account

20        of his disabilities and/or his complaints about the same, acted maliciously, fraudulently

21        and oppressively, with the wrongful intention of injuring Plaintiff. Defendants acted with

22        an evil purpose, in an intentional and deliberate manner, in violation of Plaintiff's civil

23        rights, and/or with a conscious disregard of Plaintiff's rights. Based upon the foregoing,

24        Plaintiff is entitled to recover punitive damages in an amount according to proof from

25        Defendants and each of them.

26    //

27    //

28    //

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                    -13-

Exhibit 1 Page 24

## FIFTH CAUSE OF ACTION

### (Failure to Accommodate)

### (ZAWADA Against Defendants ASI and DOES 1 through 250)

61.     The allegations of paragraphs 1 through 60 are re-alleged and incorporated herein by reference as though fully set forth herein.

62.     Plaintiff has, and had at all relevant time herein, workplace stress, anxiety and depression.

63.     Defendant ASI was aware of Plaintiff's disability, set forth in detail above, because Plaintiff informed Defendants, and each of them, of his disability and his need for accommodations. However, Defendants terminated Plaintiff because of his disability and/or his requests for accommodations for his disabilities just after returning from a one-day disability leave for his disabilities. Specifically, ASI terminated Plaintiff despite being on a work-related stress leave and with knowledge of an anticipated return to work date from said leave.

64.     Defendant ASI has an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation. FEHA entitles disabled employees to preferential consideration in reassignment of existing employees. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal. App.4th 245).

65.     Defendant ASI failed reasonably to accommodate Plaintiff's needs based on his disabilities in the following manner: After Plaintiff reported his disabilities, his work related stress, and took a medical leave because of said stress, Defendants terminated Plaintiff's employment, in part, because of his disabilities and for taking a medical leave to treat his work related stress. Such adverse employment actions were done because of

Exhibit 1 Page 25

1       Plaintiff's disabilities and/or his requests for accommodations for his disabilities, and for

2       taking a medical leave to treat his work related stress.

3

4   66.   At all times mentioned herein, Plaintiff was willing and able to perform the duties and

5       functions of his position if such reasonable accommodation had been made by

6       Defendants, and each of them.  At no time would the performance of the functions of the

7       employment position, with a reasonable accommodation for plaintiff's disabilities, have

8       been a danger to plaintiff's or any other person's health or safety, nor would it have

9       created an undue hardship to the operation of defendant's business.

10

11   67.   As a direct and legal result of Defendants' failure to accommodate Plaintiff's disabilities,

12       Plaintiff has suffered and continues to suffer general, consequential, and special damages,

13       including but not limited to substantial losses in earnings, other employment benefits,

14       *physical injuries*, *physical sickness*, as well as emotional distress, plus medical expenses,

15       future medical expenses, and attorneys' fees, all to his damage in an amount according to

16       proof.

17

18   68.   Said conduct was wrongful and justifies the imposition of punitive damages.  Defendants

19       committed the acts alleged herein maliciously, fraudulently and oppressively, with the

20       wrongful intentions of injuring Plaintiff, from an improper and evil motive amounting to

21       malice, and in conscious disregard of Plaintiff's rights.  Based upon the foregoing,

22       Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an

23       amount according to proof.

24   //

25   //

26   //

27   //

28

Exhibit 1 Page 26

## SIXTH CAUSE OF ACTION

### (Failure to Engage In Interactive Process)

### (ZAWADA Against Defendants ASI and DOES 1 through 250)

69.    The allegations of paragraphs 1 through 68 are re-alleged and incorporated herein by reference as though fully set forth herein.

70.    Plaintiff informed Defendants of his requested a reasonable accommodations for his disabilities, including workplace stress and anxiety and depression.

71.    Defendant did not engage in a timely, good faith interactive process, instead terminating Plaintiff during his medical leave which was necessitate by work-related stress.

72.    Plaintiff did not cause the breakdown of the interactive process with ASI.  Rather, ASI caused the breakdown in the interactive process with Plaintiff when it terminated Plaintiff.

73.    As a direct and legal result of Defendants' failure to engage in a good faith, timely interactive process, Plaintiff has suffered and continues to suffer general, consequential, and special damages, including but not limited to substantial losses in earnings, other employment benefits, *physical injuries, physical sickness*, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

74.    Said conduct was wrongful and justifies the imposition of punitive damages.  Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intentions of injuring Plaintiff, from an improper and evil motive amounting to

Exhibit 1 Page 27

malice, and in conscious disregard of Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

### SEVENTH CAUSE OF ACTION

**(Hostile Work Environment Harassment in Violation of FEHA)**

**(ZAWADA Against Defendants ASI, BANNISTER, and DOES 1 through 250)**

75.    The allegations of paragraphs 1 through 76 are re-alleged and incorporated herein by reference as though set forth at length.

76.    Defendants ASI and BANNISTER, and each of them, created a hostile environment for Plaintiff making the conditions of his employment intolerable in direct contravention of various statutes and state law decisions including, but not limited to, Government Code § 12940(j) and Labor Code section 1102.5.

77.    Throughout the entirety of his employment at ASI, Plaintiff was singled out and picked on by his supervisor, Defendant David Bannister (hereinafter "BANNISTER") and co-workers because of Plaintiff's age and due to his Polish heritage/background. Plaintiff complained about the harassment to BANNISTER, to no avail. In fact, the harassment of Plaintiff due to his age and Polish background only got worse.

78.    On or about November 14, 2011, Plaintiff's personal doctor placed Plaintiff on a stress leave, directly derived from the aforementioned harassment, through February 1, 2012.

79.    On January 12, 2012, after a follow up appointment with his doctor, Plaintiff's medical leave was extended through April 1, 2012. On or about January 12, Plaintiff's doctor

Exhibit 1 Page 28

1    faxed the note extending the medical leave to ASI. In addition. Plaintiff himself hand-

2    delivered this doctor's note to ASI, as well as confirmed receipt by ASI via telephone.

3

4    80.    On February 7, 2012, ASI sent Plaintiff a letter terminating Plaintiff for the following

5    pretexts: FMLA leave had expire, ASI does not mandate additional leave rights beyond

6    the 12 weeks, and ASI does not entertain requests for unpaid leaves of absence. Plaintiff

7    is informed and believes his termination was in fact in retaliation for his having taken a

8    stress leave, complaining about work related stress caused by BANNISTER; harassment

9    of which was based on Plaintiff's age and Polish heritage/background.

10

11   81.    Such continual and persistent harassment was not within managerial discretion, as it was

12   illegal conduct in violation of various statutes and state law decisions including, but not

13   limited to, Government Code Section 12940(j) and California Labor Code section 1102.5.

14   Such harassment created a hostile working environment for Plaintiff sufficiently severe

15   and pervasive to alter the conditions of Plaintiff's employment, making his working

16   conditions intolerable.

17

18   82.    As a direct and legal result of Defendants' willful, knowing, and intentional

19   discrimination and harassment against Plaintiff, Plaintiff has suffered and continue to

20   suffer general, consequential, and special damages, including but not limited to *physical*

21   *injuries, physical sickness*, substantial losses in earnings, other employment benefits, as

22   well as emotional distress, plus medical expenses, future medical expenses, and

23   attorneys' fees, all to his damage in an amount according to proof.

24

25   83.    Said willful, knowing, malicious and intentional harassment against Plaintiff justifies the

26   imposition of punitive damages against Defendants, since the harassment is against public

27   policy. Defendants committed the acts alleged herein maliciously, fraudulently,

28

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                                    -18-

Exhibit 1 Page 29

oppressively, with the wrongful intention of injuring the Plaintiff, from an improper purpose and evil motive amounting to malice, and in conscious disregard of the Plaintiff's rights. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendant BANNISTER, in an amount according to proof.

## PRAYER

1.  For damages according to proof, including loss of earnings, deferred compensation, overtime and other employment benefits;

2.  For prejudgment interest on lost wages and benefits;

3.  For general damages, according to proof;

4.  For other special damages according to proof, including but not limited to reasonable medical expenses;

5.  For punitive damages according to proof;

6.  For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining the benefits due Plaintiffs and for violations of Plaintiff's civil rights as set forth above; and

//
//
//
//
//

MARIAN ZAWADA'S COMPLAINT FOR DAMAGES                    -19-

Exhibit 1 Page 30

1    7.    For such other and further relief as the court deems just and proper.

2

3    Dated: February 6, 2013            THE LAW OFFICES OF CARLIN & BUCHSBAUM
                                        A Limited Liability Partnership
4

5

6                                      By
                                       Ronald L. Zambrano, Attorneys for Plaintiff,
7                                      MARIAN ZAWADA

8

9                      **DEMAND FOR JURY TRIAL**

10

11        Plaintiff hereby respectfully demands a jury trial.

12    Dated: February 6, 2013            THE LAW OFFICES OF CARLIN & BUCHSBAUM
                                         A Limited Liability Partnership
13

14

15                                      By
                                        Ronald L. Zambrano, Attorneys for Plaintiff,
16                                      MARIAN ZAWADA

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1 Page 31

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ronald L. Zambrano, CSBN: 255613<br>Law Offices of Carlin & Buchsbaum, LLP<br>555 East Ocean Blvd., Suite 818<br>Long Beach, California 90802 | **FILED**<br>LOS ANGELES SUPERIOR COURT<br><br>FEB 7 2013<br><br>JOHN A. CLARKE, CLERK<br>BY MARY FLORES, DEPUTY |

TELEPHONE NO.: (562)432-8933   FAX NO.: (562)435-1656
ATTORNEY FOR *(Name):* Marian Zawada, Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Central

CASE NAME: ZAWADA v. AIRCRAFT SERVICE INTERNATIONAL, INC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC500672<br>JUDGE:<br>DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: February 6, 2013

Ronald L. Zambrano, CSBN: 255613
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

Exhibit 1 Page 32

| SHORT TITLE: ZAWADA v. AIRCRAFT SERVICE INTERNATIONAL, INC., et al. | CASE NUMBER BC500672 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [ ] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 5-7 [ ] HOURS/ [X] DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/Property Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

LA-CV109

**Exhibit 1 Page 33**

SHORT TITLE: ZAWADA v. AIRCRAFT SERVICE
INTERNATIONAL, INC., et al.

CASE NUMBER

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | | |
| Wrongful Termination (36) | ☒ A6037  Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation     Number of parcels _____ | 2. |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | ☐ A6032  Quiet Title | 2., 6. |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Exhibit 1 Page 34

| SHORT TITLE: ZAWADA v. AIRCRAFT SERVICE INTERNATIONAL, INC., et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Exhibit 1 Page 35

| SHORT TITLE: ZAWADA v. AIRCRAFT SERVICE INTERNATIONAL, INC., et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:   5720 Avion Drive |
|---|---|
| CITY:  Los Angeles | STATE:  Ca | ZIP CODE:  90045 | |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the __Stanley Mosk__ courthouse in the __Central__ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: __February 6, 2013__

(SIGNATURE OF ATTORNEY/FILING PARTY)

Ronald L. Zambrano, CSBN: 255613

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Exhibit 1 Page 36

**EXHIBIT 2**

TERESA R. TRACY, ESQ. (SBN 89609)
Email: ttracy@gladstonemichel.com
JOLINA A. ABRENA, ESQ. (SBN 198683)
Email: jabrena@gladstonemichel.com
GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Marina del Rey, CA 90292-7925
Tel: (310) 821-9000 • Fax: (310) 775-8775

Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL, INC.

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 1 1 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Isabella Chambers

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARIAN ZAWADA, | CASE NO. BC 500672 |
| Plaintiff, | [Assigned for all purposes to Hon. Ernest M. Hiroshige, Dept. 54] |
| vs. | **ANSWER OF DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC. TO UNVERIFIED COMPLAINT** |
| AIRCRAFT SERVICE INTERNATIONAL, INC., a Delaware corporation; DAVID BANNISTER, an individual; and DOES 1 through 250, inclusive, | |
| Defendants. | Date Action Filed: February 7, 2013 |
| | Trial Date:     None Set |

Defendant AIRCRAFT SERVICE INTERNATIONAL, INC. ("ASII" or "Defendant") hereby answers Plaintiff Marian Zawada's ("Plaintiff") unverified Complaint for Damages filed on February 7, 2013 (the "Complaint") as follows:

1.     Pursuant to California Code of Civil Procedure § 431.30, Defendant denies generally each and every allegation in the Complaint and further denies that Plaintiff has sustained any harm, injury, damage or loss in any amount or manner whatsoever by reason of any act or omission of Defendant and further denies that Plaintiff is entitled to any of the prayed-for relief.

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

57414 Answer to Complaint of ASII.docx                     1

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

## SEPARATE DEFENSES

As separate and distinct defenses to the Complaint, and each purported cause of action therein, Defendant alleges as follows:

### FIRST SEPARATE DEFENSE
### TO ALL CAUSES OF ACTION

(Failure to State a Cause of Action)

2.      Defendant alleges on information and belief that each purported cause of action in the Complaint fails to state facts sufficient to state a cause of action upon which relief may be granted.

### SECOND SEPARATE DEFENSE
### TO ALL CAUSES OF ACTION

(Failure to Mitigate Damages)

3.      Defendant alleges on information and belief that Plaintiff has failed to mitigate his alleged damages and, therefore, is barred from recovery, in whole or in part.

### THIRD SEPARATE DEFENSE
### TO ALL CAUSES OF ACTION

(Justification)

4.      Defendant alleges that it acted with justification in making the employment workplace decisions about which Plaintiff complains in any of the causes of action.

### FOURTH SEPARATE DEFENSE
### TO ALL CAUSES OF ACTION

(Statute of Limitations)

5.      The Complaint, and each purported cause of action contained therein, are barred to the extent that Plaintiff seeks relief for conduct occurring outside of the

57414 Answer to Complaint of ASII.docx                2

ANSWER OF DEFENDANT AIRCRAFT SERVICE
INTERNATIONAL, INC.

Exhibit 2 Page 38

applicable statute of limitations as set forth in California Code of Civil Procedure § 335.1.

**FIFTH SEPARATE DEFENSE TO ALL CAUSES OF ACTION**

(Estoppel)

6. The Complaint, and each purported cause of action contained therein, are barred because any of the conduct of Defendant or its employees, which is alleged to be unlawful, was taken as a result of conduct by Plaintiff, and Plaintiff is thus estopped to assert any cause of action against Defendant.

**SIXTH SEPARATE DEFENSE TO ALL CAUSES OF ACTION**

(Unclean Hands)

7. The Complaint, and each purported cause of action contained therein, are barred because Plaintiff has been guilty of improper conduct connected to the matters alleged in the Complaint.

**SEVENTH SEPARATE DEFENSE TO ALL CAUSES OF ACTION**

(Good Faith)

8. Plaintiff's Complaint fails in whole or in part because Defendant and its employees and agents acted in good faith at all times.

**EIGHTH SEPARATE DEFENSE TO ALL CAUSES OF ACTION**

(Laches)

9. The Complaint, and each purported cause of action contained therein, are barred because Plaintiff has inexcusably and unreasonably delayed the filing of his

GLADSTONE MICHEL WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

1   action, causing prejudice to Defendant.

2

3   ### NINTH SEPARATE DEFENSE
4   ### TO ALL CAUSES OF ACTION

5   (Consent)

6   10.   The Complaint, and each purported cause of action contained therein, are

7   barred because Plaintiff consented to the alleged conduct of Defendant.

8

9   ### TENTH SEPARATE DEFENSE
    ### TO ALL CAUSES OF ACTION
10

11   (Exclusive Remedy)

12   11.   The Complaint, and each purported cause of action contained therein

13   alleged against Defendant, are barred based on the exclusive remedy provided by

14   California's workers' compensation laws.

15

16   ### ELEVENTH SEPARATE DEFENSE
    ### TO ALL CAUSES OF ACTION
17

18   (Failure to Exhaust Administrative Remedy)

19   12.   The Complaint, and each purported cause of action contained therein

20   alleged against Defendant, are barred because Plaintiff failed to exhaust his

21   administrative remedy.

22

23

24

25

26

27

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

57414 Answer to Complaint of ASII.docx

4

### ANSWER OF DEFENDANT AIRCRAFT SERVICE
### INTERNATIONAL, INC.

Exhibit 2 Page 40

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

## TWELFTH SEPARATE DEFENSE

## TO ALL CAUSES OF ACTION

13.    The Complaint, and each purported cause of action contained therein alleged against Defendant, are barred because Plaintiff has released, compromised and discharged his claims, if any, against Defendant.

WHEREFORE, this answering Defendant prays as follows:

1.    That Plaintiff takes nothing by his Complaint for damages;

2.    That Plaintiff's Complaint herein be dismissed in its entirety with prejudice;

3.    That Defendant recovers its costs of suit herein, including its reasonable attorneys' fees and

4.    That the Court award such other and further relief as it deems appropriate.

DATED: March 11, 2013

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

BY: _____
TERESA R. TRACY
JOLINA A. ABRENA
Attorneys for Defendant
AIRCRAFT SERVICE INTERNATIONAL,
INC.

## AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action. I am employed by Gladstone Michel Weisberg Willner & Sloane, ALC, whose business address is: 4551 Glencoe Avenue, Suite 300, Marina del Rey, California 90292 ("the firm").

On March 11, 2013, I served the within document(s) described as: **ANSWER OF DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC. TO UNVERIFIED COMPLAINT** on the interested parties in this action:

☒ by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
☐ addressed as follows: ☐ addressed as stated on the attached mailing list.

RONALD L. ZAMBRANO, ESQ.
LAW OFFICES OF CARLIN & BUCHSBAUM, LLP
555 East Ocean Blvd., Suite 818
Long Beach, CA 90802

☒ **BY MAIL** (C.C.P. § 1013(a))–I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Marina del Rey, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒ (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 11, 2013, at Marina del Rey, California.

ELAINE MIYASHIRO

ANSWER OF DEFENDANT AIRCRAFT SERVICE
INTERNATIONAL, INC.

Exhibit 2 Page 42

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC
4551 Glencoe Avenue, Suite 300
Los Angeles, CA 90292-7925

EXHIBIT 3

1   TERESA R. TRACY, ESQ. (SBN 89609)
    ttracy@gladstonemichel.com
2   JOLINA A. ABRENA, ESQ. (SBN 198683)
    jabrena@gladstonemichel.com
3   GLADSTONE MICHEL
    WEISBERG WILLNER & SLOANE, ALC
4   4551 Glencoe Avenue, Suite 300
    Marina del Rey, CA  90292-7925
5   Tel:  (310) 821-9000  •  Fax: (310) 775-8775

6   Attorneys for Defendant(s)
7   AIRCRAFT SERVICE INTERNATIONAL, INC.

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  MARIAN ZAWADA,                    )  CASE NO. BC 500672
                                      )
12             Plaintiff,             )  [Assigned for all purposes to
                                      )  Hon. Ernest M. Hiroshige, Dept. 54]
13  vs.                               )
                                      )  NOTICE TO ADVERSE PARTY OF
14  AIRCRAFT SERVICE                  )  THE FILING OF THE REMOVAL OF
    INTERNATIONAL, INC., a Delaware   )  CASE TO THE UNITED STATES
15  corporation;                      )  DISTRICT COURT FOR THE
    DAVID BANNISTER, an individual;   )  CENTRAL DISTRICT OF
16  and DOES 1 through 250, inclusive, )  CALIFORNIA
                                      )
17             Defendants.            )
                                      )  Date Action Filed:  February 7, 2013
18  _____  )  Trial Date:         None Set

19

20

21         TO THE CLERK OF THE ABOVE ENTITLED COURT, AND TO PLAINTIFF

22  AND HIS COUNSEL OF RECORD:

23         PLEASE TAKE NOTICE that on March 14, 2013, Defendant Aircraft Service

24  International, Inc. filed with the United States District Court, Central District of

25  California, the original of a Notice of Removal (the "Notice") removing to Federal Court

26  the above captioned action from this court.  A true and correct copy of the Notice is

27  attached hereto as Exhibit "A".

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

57414 Notice of Removal to Federal Court.docx          1
       NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Exhibit 3 Page 43

The filing of the Notice effects the removal of this action.

DATED: March 14, 2013

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC


BY: _____
        TERESA R. TRACY
        JOLINA A. ABRENA
Attorneys for Defendants
AIRCRAFT SERVICE INTERNATIONAL, INC.

57414 Notice of Removal to Federal Court.docx

2

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

Exhibit 3 Page 44

## AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

I am over the age of eighteen years and not a party to the within action.  I am employed by Gladstone Michel Weisberg Willner & Sloane, ALC, whose business address is: 4551 Glencoe Ave., Suite 300, Marina del Rey, California 90292 ("the firm").

On March 14, 2013, I served the within document(s) described as:  **NOTICE TO ADVERSE PARTY OF THE FILING OF THE REMOVAL OF CASE TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA** on the interested parties in this action:

☒    by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s)
      ☒ addressed as follows: ☐ addressed as stated on the attached mailing list.

RONALD L. ZAMBRANO, ESQ.
LAW OFFICES OF CARLIN & BUCHSBAUM, LLP
555 East Ocean Blvd., Suite 818
Long Beach, CA  90802

☒    **BY MAIL**(C.C.P. § 1013(a))–I deposited such envelope(s) for processing in the mail room in our offices.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Marina del Rey, California, in the ordinary course of business.  I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☒    (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐    (Federal) I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 14, 2013, at Marina del Rey, California.


ELAINE MIYASHIRO

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

GLADSTONE MICHEL WEISBERG WILLNER & SLOANE, ALC

Exhibit 3 Page 45

EXHIBIT 4

Filed 9/24/12  Alamo v. Practice Management Information Corp. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| LORENA ALAMO, | B230909 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BC416196) |
| PRACTICE MANAGEMENT INFORMATION CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Rex Heeseman, Judge.  Affirmed.

Neufeld, Marks & Grainek and Paul S. Marks for Defendant and Appellant.

Employment Lawyers Group and Karl Gerber for Plaintiff and Respondent.

—————————

**Exhibit 4 Page 46**

Appellant Practice Management Information Corporation (PMIC) appeals from a judgment in favor of its former employee, respondent Lorena Alamo, following a jury trial on Alamo's causes of action for pregnancy discrimination and retaliation in violation of the California Fair Employment and Housing Act (FEHA) and wrongful termination in violation of public policy.  On appeal, PMIC argues that the trial court committed prejudicial error in (1) instructing the jury pursuant to CACI Nos. 2430, 2500, 2505, and 2507 that Alamo had to prove her pregnancy-related leave was "a motivating reason" for her discharge, and (2) refusing to instruct the jury pursuant to BAJI No. 12.26 that PMIC could avoid liability under a mixed motive defense by proving it would have made the same discharge decision in the absence of any discriminatory or retaliatory motive. PMIC also argues that the trial court erred in awarding attorney's fees to Alamo as the prevailing plaintiff under FEHA where the general verdict form failed to specify whether the jury's verdict was based on the statutory FEHA claim or the common law wrongful discharge claim.  For the reasons set forth below, we affirm.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

I.    Civil Action

Following the termination of her employment, Alamo filed a civil action against her former employer, PMIC.  In her complaint, Alamo alleged three causes of action for pregnancy discrimination in violation of FEHA and the California Constitution, wrongful termination in violation of public policy, and intentional infliction of emotional distress. After the trial court partially granted and partially denied PMIC's motion for summary adjudication, the case was tried before a jury on Alamo's statutory FEHA claim and common law wrongful discharge claim.

II.    Trial Evidence

PMIC is a small company that publishes medical coding and compliance books. Alamo began her employment with PMIC in July 2006 where she worked as a clerk in the collections department.  She was later promoted to the position of lead collections clerk and was primarily responsible for billing and collecting payments from PMIC's

Exhibit 4 Page 47

largest customers. Alamo received regular pay raises during her employment, and as of
January 2009, her base rate of pay was $18 per hour. Alamo's direct supervisor was
Michelle Cuevas, the Operations Manager. Cuevas in turn reported to Gregory Trupiano,
PMIC's Executive Vice-President, and to James Davis, PMIC's founder and President.

On January 15, 2009, Alamo began a pregnancy-related leave of absence. Her
baby was born approximately two weeks later on January 27, 2009. On February 18,
2009, Alamo requested an additional six weeks of maternity leave to bond with her baby,
which was granted by PMIC. Alamo was scheduled to return to work on April 22, 2009.

While Alamo was on leave from PMIC, Marcell Moran was hired on a part-time
temporary basis to fill Alamo's position. Alamo had recommended that Moran fill in for
her during her leave because Moran previously had worked at PMIC and remained good
friends with Alamo. Moran began working in Alamo's position in February 2009 and
was paid $14 per hour for her part-time work. At that time, Moran was also pregnant
with a due date in September 2009. Moran was planning on moving out of the Los
Angeles area before the birth of her baby and only intended to work at PMIC on a
temporary basis while Alamo was on leave.

Prior to Alamo's leave of absence, Cuevas had some concerns about Alamo's
performance, but did not consider any of these problems to be serious enough to warrant
formal discipline. Cuevas testified that there were times when Alamo failed to timely
contact customers about invoices that were past due and Cuevas had to remind Alamo to
follow up on those accounts. Cuevas also testified that Alamo at times had poor working
relationships with other employees, some of whom complained that Alamo treated them
rudely. In addition to orally counseling Alamo about improving her interpersonal skills,
Cuevas sent an email to her subordinates in January 2007 reminding them to treat all
PMIC employees in a professional manner. However, Cuevas never felt that it was
necessary to issue Alamo any written warnings about her performance prior to her leave.

During Alamo's leave of absence, Cuevas became aware of other performance
problems that caused her more concern. Cuevas specifically testified that she learned
Alamo had not taken any action on certain customer accounts with large unpaid invoices

3

**Exhibit 4 Page 48**

even though Cuevas had requested that Alamo resolve those accounts before her leave.
Cuevas also testified that Alamo had told her that PMIC could not collect on two
outstanding accounts because the customers were no longer in business, which Cuevas
later learned was untrue. According to Cuevas, PMIC had to take a loss on some of
Alamo's accounts because too much time had passed to collect payment from the
customer. Cuevas intended to discuss these recently-discovered performance issues with
Alamo once she returned from her leave in April 2009. To that end, Cuevas advised
Alamo not to return to work until April 22, 2009, when Cuevas would be back in the
office from vacation.

Alamo denied that she had any performance problems at PMIC. She testified
that the customer accounts that PMIC was claiming Alamo had neglected were actually
assigned to Cuevas and that Cuevas merely had asked Alamo to assist her by following
up on certain unpaid invoices, which Alamo did. Alamo also testified that she was never
counseled by Cuevas, either orally or in writing, about her interpersonal skills in working
with other employees.

In mid-April 2009, approximately one week before her scheduled return date,
Alamo requested and received permission from Trupiano to come into the office to have
lunch with a coworker, Maria Alcocer. Alamo did not ask Cuevas for permission to visit
the office at that time because it was her understanding that Cuevas was on vacation. On
April 17, 2009, Alamo had lunch with Alcocer in PMIC's break room. As Alamo was
leaving, she had a verbal altercation with Moran, the person filling in for her, in the
hallway outside the office. The argument began because Moran wanted to know why
Alamo had not given Moran her new cell phone number. According to Moran, Alamo
said that she was having a lot of personal problems and did not want to talk to anyone.
Alamo also said that she felt Moran was being mean to their coworker, Alcocer.
According to Alamo, Moran initiated the argument, yelled at her in an angry manner, and
then told Alamo, "Well, that's good, you're going to get fired anyways." Later that day,
Alamo contacted both Trupiano and Cuevas by telephone and asked them about Moran's

Exhibit 4 Page 49

statement that Alamo was going to be fired. Cuevas told Alamo that they would discuss
the matter when Alamo returned to work the following week.

Shortly after Alamo left the office, Moran had a separate verbal altercation with
Alcocer. Alcocer and Moran had been having a personality conflict for several months
that escalated into an argument that day. As described by Alcocer, Moran approached
her desk and began yelling at her because Alcocer recently had complained to Cuevas
that Moran was being rude to her. Moran told Alcocer that she should talk to Moran
directly about any problems between them instead of complaining to Cuevas. After the
argument with Moran, Alcocer decided to take a stress-related leave of absence because
she felt that Moran and another employee named Elaine Rodriguez were being verbally
abusive to her. Alcocer began her leave on April 20, 2009, and she did not return to work
until four months later in August 2009.

On April 22, 2009, Alamo returned to work from her maternity leave. After
working for about three hours, Alamo was called into a meeting with Cuevas and
Trupiano and told that her employment was being terminated. According to Alamo,
Cuevas said during the meeting that she felt Alamo was not doing her job and specifically
mentioned one unpaid account. There was no mention of Alamo's recent visit to the
office for lunch with Alcocer or to her verbal altercation with Moran. There was also no
mention of Alamo's pregnancy or maternity leave. At the end of the meeting, Cuevas
explained that if Alamo signed a release waiving any claims she might have against
PMIC, Cuevas would be able to provide Alamo with a positive employment reference.
Alamo, however, refused to sign the release.

Cuevas testified that, as of April 22, 2009, she believed PMIC should terminate
the employment of both Alamo and Moran, and she made that recommendation to her
superiors, Trupiano and Davis. Cuevas explained that she did not feel that Alamo's prior
performance problems, standing alone, were serious enough to warrant termination.
However, when Alamo's history of poor performance was considered with her recent act
of insubordination in visiting the office without Cuevas' permission and then having a
verbal altercation with a coworker, Cuevas felt that termination was warranted. Cuevas

5

Exhibit 4 Page 50

admitted that she did not talk to Alamo about what happened during the altercation before deciding that Alamo should be discharged. Cuevas further admitted that Alamo had received permission to visit the office from Trupiano, but testified that Alamo nevertheless was insubordinate in ignoring Cuevas' instruction that Alamo not return to work until the following week. Cuevas also stated that she believed Alamo knew that Cuevas would not have allowed her to come into the office when Cuevas was not there given the ongoing conflict between Alcocer and Moran. Cuevas testified that her recommendation to discharge Alamo had nothing to do with her pregnancy or maternity leave, but rather was based solely on Alamo's performance and insubordination issues.

Trupiano and Davis were both involved in the final decision to terminate Alamo's employment. Trupiano testified that he agreed with Cuevas that Alamo should be discharged based on her poor work performance and insubordination, but decided to defer to Davis as to whether Moran also should be discharged given that she had no other disciplinary issues. Davis testified that he made the decision to terminate Alamo's employment based solely on her performance issues in neglecting her assigned customer accounts, her act of insubordination in visiting the office without Cuevas's permission, and then engaging in a verbal altercation with a coworker. Davis testified that he decided not to discharge Moran for her involvement in the altercation because it was her first incident of inappropriate conduct. At trial, both Davis and Trupiano denied that Alamo was terminated for any reason related to her pregnancy or maternity leave. Following Alamo's discharge, PMIC decided to provide her with one month of severance pay not conditioned upon the signing of any release.

III.    Jury Verdict and Attorney's Fees Award

At the conclusion of the trial, the jury returned a general verdict in favor of Alamo and awarded her damages in the amount of $10,000. With respect to Alamo's request for punitive damages, however, the jury found that she failed to prove by clear and convincing evidence that PMIC acted with malice, oppression, or fraud. Following the verdict, the trial court granted Alamo's motion for attorney's fees and costs as the

6

Exhibit 4 Page 51

prevailing plaintiff under FEHA and awarded her counsel attorney's fees in the amount
of $50,858.44. PMIC thereafter filed a timely notice of appeal.

## DISCUSSION

PMIC raises two arguments on appeal. First, PMIC contends that the trial court
committed prejudicial error in instructing the jury on the proper standard of causation in
Alamo's claims for pregnancy discrimination and retaliation in violation of FEHA and
wrongful termination in violation of public policy. Second, PMIC claims that the trial
court erred in awarding attorney's fees to Alamo as the prevailing plaintiff under FEHA
based on a general verdict that failed to identify the specific cause of action on which
Alamo had prevailed.

I.    **Alleged Instructional Error**

PMIC first asserts that the trial court prejudicially erred in failing to properly
instruct the jury on the standard of causation in a FEHA claim. PMIC specifically argues
that the trial court erred in instructing the jury pursuant to CACI Nos. 2430, 2500, 2505,
and 2507 that Alamo had to prove her pregnancy-related leave was "a motivating reason"
for her discharge, rather than the "but for" cause of her discharge. PMIC also contends
that the trial court erred in refusing to instruct the jury pursuant to BAJI No. 12.26 that
PMIC could avoid liability under a mixed motive defense by proving it would have made
the same decision even in the absence of a discriminatory or retaliatory motive. As the
parties acknowledge, the question of the proper standard of causation in a FEHA claim,
including the availability of a mixed motive defense, is currently pending before the
California Supreme Court in *Harris v. City of Santa Monica*, review granted April 22,
2010, S181004 (*Harris*). Pending further guidance on this issue by the Supreme Court,
we conclude that the trial court did not commit any instructional error in this case.

A.    **Relevant Jury Instructions**

The trial court instructed the jury on the essential elements of Alamo's causes of
action with CACI No. 2430 (wrongful discharge in violation of public policy), CACI No.
2500 (disparate treatment under FEHA), CACI No. 2505 (retaliation under FEHA), and

Exhibit 4 Page 52

CACI No. 2527 (failure to prevent discrimination or retaliation under FEHA). With respect to CACI Nos. 2430, 2500, and 2505, the trial court instructed the jury that Alamo had to prove, among other elements, that her pregnancy or taking of a pregnancy-related leave was "a motivating reason" or "a motivating factor" for her discharge. With respect to CACI No. 2527, the trial court instructed the jury that Alamo had to prove, among other elements, that she was subject to discrimination or retaliation "because" she took a pregnancy-related leave. The trial court also instructed the jury on the definition of "a motivating reason" with CACI No. 2507, stating that "[a] motivating reason is a reason that contributed to the decision to take certain actions even though other reasons also would have contributed to the decision."

The trial court refused PMIC's request that CACI Nos. 2430, 2500, and 2505 be modified to state that Alamo must prove her pregnancy or taking of a pregnancy-related leave was "a substantial motivating reason," as opposed to "a motivating reason," for her discharge. The trial court also refused PMIC's request that CACI No. 2507 be modified to state that if the same decision would have been made in the absence of any discriminatory or retaliatory motive, then the discrimination or retaliation was not a substantial motivating reason for the decision. Finally, the trial court refused PMIC's request that the jury be instructed on the mixed motive defense with BAJI No. 12.26, which states, in pertinent part, as follows: "If you find that the employer's action, which is the subject of the plaintiff's claim, was actually motivated by both discriminatory and non-discriminatory reasons, the employer is not liable if it can establish by a preponderance of the evidence that its legitimate reason, standing alone, would have induced it to make the same decision."[1]

---

[1]    PMIC requested that the jury be instructed with BAJI 12.26 in a motion in limine filed prior to trial. Although the record on appeal does not include the trial court's ruling on the motion, it appears from the court's discussion with counsel at a pretrial hearing on jury instructions that the court denied PMIC's request.

Exhibit 4 Page 53

### B.    Standard of Review

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him or her which is supported by substantial evidence." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)  A court may refuse a proposed instruction that incorrectly states the law or is argumentative, misleading, or incomplete.  (*Shaw v. Pacific Greyhound Lines* (1958) 50 Cal.2d 153, 158; see also *Harris v. Oaks Shopping Center* (1999) 70 Cal.App.4th 206, 209 ["[i]rrelevant, confusing, incomplete or misleading instructions need not be given"].)  A court also may refuse an instruction requested by a party when the legal point is adequately covered by other instructions given.  (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1189, fn. 11.)

"The propriety of jury instructions is a question of law that we review de novo. [Citation.]" (*Cristler v. Express Messenger Systems* (2009) 171 Cal.App.4th 72, 82.)  When the contention on appeal is that the trial court failed to give a requested instruction, we review the record in the light most favorable to the party proposing the instruction to determine whether it was warranted by substantial evidence. (*Ayala v. Arroyo Vista Family Health Center* (2008) 160 Cal.App.4th 1350, 1358.)  In the event the trial court erred, "[a] judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citation.]" (*Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 580.)  "A 'miscarriage of justice' exists when, after examining all the evidence, we conclude '"'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.'"' [Citation.]" (*Weaver v. Chavez* (2005) 133 Cal.App.4th 1350, 1356.)

### C.    The trial court did not err in instructing the jury on the standard of causation with CACI Nos. 2430, 2500, 2505, 2507, and 2527.

PMIC contends that the trial court erred in instructing the jury on the element of causation in a FEHA claim because the CACI instructions given to the jury did not

Exhibit 4 Page 54

express the "but for" standard of causation required under FEHA. According to PMIC, FEHA requires an employee alleging a discriminatory or retaliatory discharge to prove that his or her protected status or activity was the "but for" cause of the discharge rather than "a motivating factor" in the discharge. A review of the language and legislative purpose of FEHA, as well as the relevant case law, does not support PMIC's position.

FEHA makes it an unlawful employment practice "[f]or an employer, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition . . ., marital status, sex, . . . age, or sexual orientation of any person, . . . to discharge the person from employment . . . ." (Gov. Code, § 12940, subd. (a).) FEHA also makes it an unlawful employment practice for an employer "to refuse to allow a female employee disabled by pregnancy, childbirth, or a related medical condition to take a leave for a reasonable period of time not to exceed four months and thereafter return to work," or "to refuse to grant a request by any [qualifying] employee . . . to take up to a total of 12 workweeks in any 12-month period for family care and medical leave." (Gov. Code, §§ 12945, subd. (a)(1), 12945.2, subd. (a).)

The express purposes of FEHA are "to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons." (Gov. Code, § 12920.5.) The Legislature accordingly has mandated that the provisions of statute "shall be construed liberally" to accomplish its purposes. (Gov. Code, § 12993, subd. (a).) As our Supreme Court has recognized, "[b]ecause the FEHA is remedial legislation, which declares '[t]he opportunity to seek, obtain and hold employment without discrimination' to be a civil right [citation], and expresses a legislative policy that it is necessary to protect and safeguard that right [citation], the court must construe the FEHA broadly, not . . . restrictively." (*Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243.)

The California Supreme Court has not addressed whether the CACI instructions' use of the phrase "a motivating reason" accurately describes the standard of causation in a FEHA claim, although this issue ultimately may be decided by the court in *Harris*. The Supreme Court has suggested in dicta, however, that "a motivating reason" or "a

Exhibit 4 Page 55

motivating factor" is the proper causation standard under FEHA.  Specifically, in

*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, the Supreme Court considered

whether a defendant employer was entitled to summary judgment in a FEHA

discrimination claim based on evidence that it terminated the plaintiff's employment due

to downsizing.  In rejecting the employer's argument that downsizing alone was a

sufficient non-discriminatory reason for the discharge, the court noted that "[i]nvocation

of a right to downsize does not resolve whether the employer had *a discriminatory motive*

for cutting back its work force, or engaged in intentional discrimination when deciding

which individual workers to retain and release." (*Id.* at p. 358, italics added.)  As the

court further explained, in a FEHA discrimination case, "the ultimate issue is simply

whether the employer acted with *a motive to discriminate illegally*." (*Ibid.*)

Over the years, the California appellate courts likewise have used the phrase "a

motivating factor" or "a motivating reason" in describing the standard of causation in a

FEHA discrimination or retaliation claim.  (See, e.g., *Green v. Laibco, LLC* (2011) 192

Cal.App.4th 441, 443 [concluding that "there was substantial evidence supporting the

jury's finding that plaintiff's complaint of sexual harassment of a colleague was a

motivating reason for her discharge"]; *West v. Bechtel Corp.* (2002) 96 Cal.App.4th

966, 978 [noting that "[a] discharge is not 'on the ground of age' within the meaning of

[FEHA's] prohibition unless age is a 'motivating factor' in the decision"]; *Caldwell v.*

*Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 205 [stating that once a

FEHA discrimination case is submitted to the trier of fact, it "will have only to decide the

ultimate issue of whether the employer's discriminatory intent was a motivating factor in

the adverse employment decision"].)  As the Court of Appeal explained in *Mixon v. Fair*

*Employment & Housing Com.* (1987) 192 Cal.App.3d 1306, an employee alleging race

discrimination under FEHA "need not prove that racial animus was the sole motivation

behind the challenged action," but rather "must prove by a preponderance of the evidence

that there was a 'causal connection' between the employee's protected status and the

adverse employment decision." (*Id.* at p. 1319; see also *Clark v. Claremont University*

*Center* (1992) 6 Cal.App.4th 639, 665 ["The employee need not show 'he would have in

Exhibit 4 Page 56

any event been rejected or discharged solely on the basis of his race, without regard to the alleged deficiencies . . . .'"].) The language of the challenged CACI instructions incorporates this element of a "causal connection" by requiring the employee to prove that his or her protected status was "a motivating reason" for the adverse decision.

In support of its argument that FEHA requires the plaintiff to prove "but for" causation, PMIC primarily relies on *Gross v. FBL Financial Services, Inc.* (2009) 557 U.S. 167 (*Gross*), a case arising under the federal Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.). In *Gross*, the United States Supreme Court held in a 5-4 decision that a plaintiff alleging discrimination under the ADEA must prove that age was the "but for" cause of the challenged action. (*Gross, supra*, at p. 176.) However, the majority in *Gross* based its decision on the distinct legislative history of the ADEA as compared to that of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e et seq.). Specifically, in 1991, Congress amended Title VII to provide that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." (42 U.S.C. § 2000e-2(m).) Because Congress did not make a parallel amendment to the ADEA at that time, the *Gross* majority reasoned that Congress must have rejected the "motivating factor" standard for claims alleged under the ADEA. (*Gross, supra*, at pp. 174-175.) Therefore, while both Title VII and the ADEA prohibit discrimination "because of" a person's membership in a protected class,[2] a plaintiff in an ADEA case

---

[2]     Title VII specifically states that "[i]t shall be an unlawful employment practice for an employer . . . [¶] to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin . . . ." (42 U.S.C. § 2000e-2(a)(1), italics added.) The ADEA similarly provides that "[i]t shall be unlawful for an employer . . . [¶] to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age . . . ." (29 U.S.C. § 623(a), italics added.)

12

Exhibit 4 Page 57

must prove that discriminatory animus was the "but for" cause of the adverse employment action, whereas a plaintiff in a Title VII case merely must establish that discriminatory animus was "a motivating factor" in the challenged decision. Given these conflicting standards of causation that now apply under the federal anti-discrimination statutes, we decline to follow *Gross* in considering the proper standard of causation under FEHA.

PMIC also relies on a handful of California cases to support its claim that FEHA requires a "but for" standard of causation, but only two of PMIC's cited cases -- *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264 (*Lyle*) and *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95 (*Reeves*) -- involved claims arising under FEHA. In *Lyle*, the California Supreme Court noted in dicta that "'[t]o plead a cause of action for [hostile work environment] sexual harassment, it is "only necessary to show that gender is a substantial factor in the discrimination, and that if the plaintiff 'had been a man she would not have been treated in the same manner.'" [Citation.]'" (*Lyle, supra,* at p. 280.) However, *Lyle* did not address the proper standard of causation in a FEHA discrimination or retaliation claim, nor did it state that a plaintiff in a FEHA harassment claim must prove that gender was the sole motivating factor for the hostile work environment. In *Reeves*, the California Court of Appeal considered whether an employer may be liable for retaliatory discharge under FEHA when the supervisor who initiated disciplinary proceedings that led to the discharge acted with a retaliatory animus, but the ultimate decision-maker had no knowledge of the plaintiff's protected activity. (*Reeves, supra,* at p. 100.) The *Reeves* court held that "so long as the supervisor's retaliatory motive was an actuating, but-for cause of the dismissal, the employer may be liable for retaliatory discharge." (*Ibid.*) Yet elsewhere in the opinion, the *Reeves* court suggested that an employer may be liable for retaliation under FEHA if the employee presents "sufficient proof to establish that retaliatory animus on the part of one or more contributors to the decision was *a substantial contributing factor* in bringing about his dismissal." (*Id.* at p. 113, italics added.) Thus, when read in their entirety, neither *Lyle*

13

Exhibit 4 Page 58

nor *Reeves* supports a conclusion that the "because of" language in FEHA means "solely because of" the employee's protected status or activity.

PMIC further asserts that FEHA's use of "a motivating factor" causation standard in its housing discrimination provisions but not its employment discrimination provisions must mean that a different standard applies in an employment case.  However, a review of the relevant provisions of FEHA shows that both the employment and housing sections of the statute use the same terminology -- "because of" - in defining the prohibited acts of discrimination.[3]  In the housing section, FEHA further provides that "[a] person intends to discriminate if [the protected trait] is a motivating factor in committing a discriminatory housing practice even though other factors may have also motivated the practice." (Gov. Code, § 12955.8, subd. (a).)  That same language is not included in FEHA's employment section.  But given that both the employment and housing provisions expressly prohibit discrimination "because of" a person's membership in a protected class, we reject PMIC's argument that the Legislature must have intended for a different standard of causation to apply to FEHA's employment provisions.

PMIC suggests that the CACI instructions' use of "a motivating reason" standard permits a jury to find in favor of the plaintiff if the challenged employment decision was motivated in the slightest possible way by discrimination without considering whether the

---

[3]    In the employment section, FEHA provides that "[i]t is an unlawful employment practice . . . [¶] (a) For an employer, *because of* the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." (Gov. Code, § 12940, subd. (a), italics added.)  In the housing section, FEHA similarly states that "[i]t shall be unlawful: [¶] (a) For the owner of any housing accommodation to discriminate against or harass any person *because of* the race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information of that person." (Gov. Code, § 12955, subd. (a), italics added.)

14

Exhibit 4 Page 59

employer actually acted upon such motivation. We disagree. The jury was instructed, pursuant to CACI Nos. 2430, 2500, and 2505, that it could only find in favor of Alamo if she proved by a preponderance of the evidence that her pregnancy or pregnancy-related leave was "a motivating reason" for her discharge.[4] The jury further was instructed, pursuant to CACI No. 2507, that "[a] motivating reason is a reason that contributed to the decision to take certain actions even though other reasons also would have contributed to the decision." Accordingly, the instructions required Alamo to establish that there was a causal connection between her protected status and the adverse employment decision. The trial court did not err in instructing the jury with CACI Nos. 2430, 2500, 2505, 2507, and 2527.

### D.   The trial court did not err in refusing to instruct the jury on the mixed motive defense with BAJI No. 12.26.

Alternatively, PMIC contends that the trial court erred in refusing its request to instruct the jury on the mixed motive defense with BAJI No. 12.26. PMIC reasons that had the jury been instructed on the availability of the mixed motive defense under FEHA, it could have found in favor of PMIC based on evidence that PMIC would have made the same decision to terminate Alamo's employment even in the absence of a discriminatory or retaliatory motive. As discussed, the question of whether a mixed motive defense is available under FEHA is currently pending before the California Supreme Court in *Harris*. However, we need not decide that issue here. Even if we assume for purposes of this appeal that the mixed motive defense applies to FEHA claims, the trial court did not err in refusing to instruct the jury with BAJI No. 12.26 because this case was tried by both parties as a single motive, not a mixed motive, case.

---

[4]      CACI No. 2527, which sets forth the essential elements of a claim for failure to prevent discrimination or retaliation, does not use the phrase "a motivating reason" or "a motivating factor." Rather, the instruction required Alamo to prove she was subject to discrimination or retaliation "because" she took a pregnancy-related leave. This phrase actually mirrors the language of FEHA's anti-discrimination provision which prohibits discrimination "because of" a person's protected status. (Gov. Code, § 12940, subd. (a).)

15

Exhibit 4 Page 60

The mixed motive defense was first articulated by the United States Supreme Court in *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228 (*Price Waterhouse*). The plaintiff in *Price Waterhouse* filed a Title VII sex discrimination action against her employer after she was refused admission as a partner. The evidence at trial established that the plaintiff was denied partnership based on both permissible factors (her lack of interpersonal skills) and impermissible factors (sexual stereotypes about her lack of femininity). (*Id.* at pp. 250-252.) In a plurality decision, the Supreme Court rejected the argument that Title VII's prohibition of discrimination "because of" sex required the plaintiff to prove that her gender was the "but for" cause of the adverse action. (*Id.* at pp. 240-242.) Rather, the Supreme Court held that the plaintiff had to prove that "her gender played a motivating part in an employment decision." (*Id.* at p. 258.) The Supreme Court further held that, where the employment decision was the product of a mixture of legitimate and illegitimate motives, the employer could avoid a finding of liability "only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account." (*Ibid.*)[5]

Citing *Price Waterhouse*, several California Court of Appeal cases have assumed without deciding that the mixed motive defense is also available under FEHA. (See *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 703 (*Huffman*) [mixed motive defense "limits the employer's liability, once a plaintiff has established an unlawful motive, if the employer can show that it would have taken the same action absent the unlawful motive"]; *Reeves, supra,* 121 Cal.App.4th at p. 111, fn. 11 [under a mixed motive analysis, "a case goes to the jury if there is evidence that an impermissible criterion """was a motivating factor for any employment practice"""]; *Heard v. Lockheed*

---

[5]    In its 1991 amendments to Title VII, Congress partially ratified the *Price Waterhouse* holding by adopting the "a motivating factor" standard of causation, and partially overruled the decision by providing that the mixed motive defense does not defeat a finding of liability, but merely limits available remedies. (42 U.S.C. § § 2000e-2(m), 2000e-5(g)(2)(B).) Thus, the mixed motive defense has been codified into Title VII, but only as a limitation on remedies rather than a complete defense to liability.

Exhibit 4 Page 61

*Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1748 (*Heard*) ["In some cases, the evidence will establish that the employer had 'mixed motives' for its employment decision. [Citation] In a mixed motive case, both legitimate and illegitimate factors contribute to the employment decision"].) None of these California cases, however, actually applied the mixed motive defense to a FEHA claim. Moreover, in referencing the mixed motive defense, the cases have recognized that there is a critical distinction between a true mixed motive case and a single motive pretext case.

In *Reeves*, for instance, the Court of Appeal noted that both parties had treated the plaintiff's FEHA retaliation claim as a pretext case to "be analyzed within the three-step analytical framework adopted by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-804," and that the plaintiff "ha[d] not invoked the competing model of ""mixed motive"" analysis." (*Reeves, supra*, 121 Cal.App.4th at p. 111, fn. 11.) Similarly, in *Huffman*, the Court of Appeal rejected the plaintiff's argument that the employer in a FEHA discrimination claim had the burden of proof because it was a mixed motive case. (*Huffman, supra*, 121 Cal.App.4th at p. 702.) As the *Huffman* court reasoned, "[t]his case was pled and tried as a pretext case, that is, [the employer's] decision was a pretext for age discrimination. [The employer] never raised mixed-motive as an affirmative defense and it was never presented to the jury as a mixed-motive case. Rather, [the plaintiff] succeeded at trial in convincing the jury that [the employer's] stated reasons for its decision were not legitimate and the real reason [the plaintiff] was demoted was because of his age . . . . Had this been a true mixed-motive case, the employment decision at issue would have resulted from a mixture of illegitimate and legitimate considerations." (*Ibid.*)

The *Price Waterhouse* decision itself noted the distinction between a mixed motives case and a single motive pretext case. As Justice White explained in his concurrence, "'mixed-motives' cases . . . are different from pretext cases . . . . In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the decision.' [Citation.] In mixed-motives cases, however, there is no one 'true' motive behind the decision. Instead, the decision is a result of multiple factors,

Exhibit 4 Page 62

at least one of which is legitimate." (*Price Waterhouse*, *supra*, 490 U.S. at p. 260 (conc. opn. of White, J.).) While a case need not "be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning . . ., [a]t some point in the proceedings, of course, the District Court must decide whether a particular case involves mixed motives," and instruct the jury accordingly. (*Id.* at p. 247, fn. 12 (plur. opn. of Brennan, J.).) This distinction is consistent with the Use Note to BAJI No. 12.26 which cautions that the instruction "should only be used in a true mixed-motive situation," and "does not apply to the circumstances where it is claimed that a legitimate reason was in fact a pretext for unlawful action."

Here, the record reflects that neither Alamo nor PMIC presented the case to the jury as a mixed motive case. Instead, both parties defined the issue before the jury solely as one of pretext. PMIC consistently argued that its decision to terminate Alamo's employment was based entirely on her performance and insubordination issues, whereas Alamo maintained that PMIC's proffered reasons were a mere pretext for pregnancy discrimination. Indeed, in its motion in limine requesting a mixed motive instruction, PMIC asserted as follows: "Let us be crystal clear about one thing: *defendant PMIC did not have mixed motives*. PMIC did not for a moment take into account plaintiff's status as a recently-pregnant woman returning from maternity leave, in deciding to terminate her employment. Therefore, this case is in fact a 'single motive' case, where the motive was lawful and non-discriminatory. . . . Nonetheless, because plaintiff claims discrimination, and because the case survived summary judgment, BAJI's 'mixed-motive' instruction is appropriate." During trial, PMIC continued to take the position that Alamo's pregnancy-related leave had nothing to do with her discharge. PMIC's counsel thus argued to the jury that "Ms. Alamo did not lose her job because of pregnancy discrimination, because of going out on maternity leave, because of anything having to do with the fact that she got pregnant." Alamo's counsel, on the other hand, urged the jury to find that the decision-makers were not credible and that PMIC had offered only "false and pretextual reasons" for its discharge decision.

18

Exhibit 4 Page 63

After hearing the evidence presented by both parties, the trial court had to decide what legal theories were reasonably supported by the evidence and to instruct the jury accordingly.  To the extent that a mixed motive defense is available under FEHA, the trial court was not required to instruct the jury on the defense where the only logical findings supported by the evidence were that "'either illegal or legal motives, but not both, were the "true" motives behind the decision.'"  (*Price Waterhouse, supra,* 490 U.S. at p. 260 (conc. opn. of White, J.).)  The trial court reached such a determination in this case, reasonably concluding as follows: "[H]ere's what this case comes down to. . . . Plaintiff's arguing she was terminated because of her pregnancy condition.  Defendants are arguing no, we terminated her for what I'll call performance and personality reasons.  I mean, it's an either/or.  Both sides are litigating this case on that basis."  Given that both parties consistently treated the case as a single motive pretext case, the trial court did not err in refusing to instruct the jury on the mixed motive defense.[6]

## II.    Alleged Error In Attorney's Fees Award

On appeal, PMIC also challenges the trial court's order awarding attorney's fees to Alamo as the prevailing plaintiff under FEHA.  PMIC contends that the general verdict rendered by the jury cannot support an attorney's fees award under FEHA because the verdict form failed to specify whether Alamo prevailed on the statutory cause of action for violation of FEHA or the common law cause of action for wrongful termination in violation of public policy.  We conclude that this claim likewise lacks merit.

First, PMIC's assertion of error in the attorney's fees award is barred by the doctrine of invited error.  "The 'doctrine of invited error' is an 'application of the estoppel principle': 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal. [Citation.]" (*Norgart v.*

---

[6]    In light of this conclusion, we need not address Alamo's argument that PMIC forfeited its right to assert a mixed motive defense at trial by failing to raise it as an affirmative defense in its answer.

Exhibit 4 Page 64

*Upjohn Co.* (1999) 21 Cal.4th 383, 403.)  The purpose of the doctrine is to "prevent a party from misleading the trial court and then profiting therefrom in the appellate court." (*Ibid.*)  The doctrine "requires affirmative conduct demonstrating a deliberate tactical choice on the part of the challenging party." (*Huffman, supra,* 121 Cal.App.4th at p. 706.)  "[W]here a deliberate trial strategy results in an outcome disappointing to the advocate, the lawyer may not use that tactical decision as the basis to claim prejudicial error." (*Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686.)

In this case, it is clear that PMIC invited the purported error as a matter of trial strategy.  The record reflects that, after waiting until the end of trial to decide whether it wanted a general or special verdict, PMIC ultimately agreed to a general verdict which its counsel prepared.  In opposing Alamo's posttrial motion for attorney's fees, PMIC then raised the same argument that it is asserting here, i.e., that the use of a general verdict form precluded the trial court from determining whether Alamo was a prevailing plaintiff under FEHA.  At the hearing on the motion for attorney's fees, PMIC's counsel elaborated on the basis for this argument, explaining on the record as follows: "There were good reasons for me to do a special verdict, it would make the jury think about things, but I knew about this argument that, you know, maybe you couldn't intuit a FEHA verdict if there was a wrongful termination result.  So that was a tactical reason for me as well."  Therefore, by its counsel's own admission, PMIC agreed to a general verdict form as a deliberate tactical choice so that it could later challenge any attorney's fees ordered by the trial court on the basis of an alleged ambiguity in the verdict form itself.  Under these circumstances, PMIC has forfeited its claim of error on appeal.

Second, even assuming the claim has not been forfeited, PMIC's argument fails on the merits.  FEHA provides that, "[i]n actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . ." (Gov. Code, § 12965, subd. (b).)  "The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination on account" of their membership in a protected class. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 582-583.)  An award of reasonable

<div align="center">20</div>

Exhibit 4 Page 65

attorney's fees accomplishes "the Legislature's expressly stated purpose of FEHA 'to provide effective remedies that will eliminate these discriminatory practices.'" (*Id.* at p. 583.) "Generally, the trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion, which should not be disturbed on appeal absent a clear showing of abuse of discretion. [Citation.]" (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176.) However, "[t]he determination of the legal basis for an award of attorney fees is a question of law that we review de novo." (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 921.)

The instant case was tried before the jury on two separate, but related causes of action: (1) pregnancy discrimination or retaliation in violation of FEHA; and (2) wrongful termination in violation of the public policy embodied in FEHA. It is well-established that "'FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy.'" (*Estes v. Monroe* (2004) 120 Cal.App.4th 1347, 1355; see also *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 897 ["FEHA's policy against . . . discrimination in employment is sufficiently substantial and fundamental to support a tort claim for wrongful discharge"].) Moreover, "when a plaintiff relies upon a statutory prohibition to support a common law cause of action for wrongful termination in violation of public policy, the common law claim is subject to statutory limitations affecting the nature and scope of the statutory prohibition . . . ." (*Stevenson v. Superior Court, supra,* at p. 904.) "In other words, the viability of [the] plaintiff's tort claim is tethered to the meaning of the FEHA." (*Estes v. Monroe, supra,* at p. 1355.)

Because Alamo's common law claim for wrongful termination in violation of public policy was derivative of her statutory claim for violation of FEHA, the public policy claim would either rise or fall with the FEHA claim. (See *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 229 [where plaintiff's "FEHA claim fails, his claim for wrongful termination in violation of public policy fails"].) This means that Alamo could not have prevailed on either cause of action at trial unless she proved by a preponderance of the evidence that PMIC discriminated or retaliated against her in violation of the

Exhibit 4 Page 66

statutory prohibitions set forth in FEHA.  Consequently, if the jury found in favor of
Alamo in her claim for wrongful termination in violation of public policy, then it must
have found that PMIC's termination of her employment was in violation of FEHA.

For these reasons, PMIC's reliance on the decision in *McKenzie v. Kaiser-Aetna*
(1976) 55 Cal.App.3d 84 (*McKenzie*) is misplaced.  In *McKenzie*, the jury returned a
general verdict in favor of the plaintiff in a case that alleged multiple causes of action
for breach of contract, breach of implied warranty, negligent misrepresentation, and
restitution.  (*Id.* at p. 87.)  The plaintiff thereafter moved for an attorney's fees award
based on a provision in a written contract that allowed for the recovery of such fees in an
action on the contract.  (*Id.* at pp. 86-87.)  The Court of Appeal held that the plaintiff was
not entitled to attorney's fees under the contract because there was "no way to ascertain,
in the absence of special jury findings, on which of the theories of recovery (breach of
contract, negligent misrepresentation, or breach of implied warranty) the jury mainly
based its award to [the plaintiff]."  (*Id.* at pp. 88-89.)  As the Court of Appeal further
noted, "[t]hose theories do not all call for identical determinations of fact," nor do they
all constitute "an action to enforce the provisions of a contract."  (*Id.* at p. 89.)

In this case, however, both the statutory FEHA claim and the common law
wrongful discharge claim were based on the same factual and legal theory.  To prevail on
either cause of action at trial, Alamo had to prove that PMIC terminated her employment
in violation of FEHA because of her pregnancy or taking of a pregnancy-related leave.
By returning a general verdict in favor of Alamo and against PMIC on this issue of
liability, the jury found a violation of FEHA.  The trial court accordingly did not abuse its
discretion in awarding attorney's fees to Alamo as the prevailing plaintiff under FEHA.

## DISPOSITION

The judgment is affirmed.  Alamo shall recover her costs on appeal.


ZELON, J.

We concur:


22

Exhibit 4 Page 67

PERLUSS, P.J.                    WOODS, J.

23

**Exhibit 4 Page 68**

EXHIBIT 5

## RODRIGUEZ v. CALIFORNIA DEPARTMENT OF JUSTICE

### JAMES RODRIGUEZ, Plaintiff and Respondent,

v.

### CALIFORNIA DEPARTMENT OF JUSTICE, Defendant and Appellant.

#### No. C064756.

Court of Appeals of California, Third District, Sacramento.

Filed January 31, 2012.

---

### NOT TO BE PUBLISHED

ROBIE, J.

In this case under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (the FEHA), plaintiff James Rodriguez recovered a judgment against his employer, the Department of Justice (the department), for $560,709 in damages and was awarded $645,534 in attorney fees. On appeal, the department asserts numerous errors, including denial of its motion to bifurcate the trial and application of a multiplier in the award of attorney fees. We find the department's arguments without merit, with one exception: the trial court erred in providing for postjudgment interest on the award of damages at the rate of 10 percent per annum, rather than the 7 percent rate that applies to judgments against state agencies like the department. Accordingly, we will modify the judgment to correct that interest rate and will affirm the judgment as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

#### The Underlying Facts

Only a relatively brief summary of the rather extensive underlying facts is necessary.

Rodriguez began working for the department in 1988. In 1991, he became a special agent.

In May 2006, while assigned to the Sacramento Regional Office for the Bureau of Narcotic Enforcement, Rodriguez contacted the department's equal employment rights and resolution unit (the unit) to complain that he was being treated differently — including being passed over for promotion — because he is Hispanic and because of his support for two other agents with regard to their EEOC (Equal Employment Opportunity Commission) complaints. When his complaint to the unit produced no results, in September 2006 Rodriguez filed his own EEOC complaint, alleging discrimination that included a disciplinary memorandum and denial of an assignment as an acting supervisor in December 2005, removal from an assignment as an acting supervisor after serving only one day in April 2006, and involuntary reassignments in February and April 2006.

In November 2006, Rodriguez and representatives of the department attended a mediation of Rodriguez's EEOC complaint. At that mediation, the parties entered into a handwritten memorandum of understanding. Among other things, that memorandum provided that Rodriguez would be provided the opportunity to take supervision training at the department's expense and that at such time as the

Exhibit 5 Page 69

position of acting task force commander in South Lake Tahoe became available, Rodriguez would be given that assignment for 30 to 120 days. If that position was not available, upon agreement of the parties, Rodriguez was to be given as assignment as an acting task force commander elsewhere. The memorandum further provided that the parties would enter into a formal settlement agreement "with the standard release language," which apparently was to come from the EEOC's "standard negotiated settlement agreement."

In mid-to late-November 2006, the department placed someone other than Rodriguez in the acting supervisor position in South Lake Tahoe.

In February 2007, the parties signed a formal "Settlement Agreement and Release of Claims" based on the November 2006 memorandum of understanding. Under the terms of the agreement, Rodriguez "waive[d] any rights to assert any claims based upon events through the Settlement Date . . . against [the department]," which was November 3, 2006.

In August 2007, Rodriguez filed a second EEOC complaint alleging further discrimination between December 2006 and July 2007, including multiple denials of promotion. Among other things, he complained that the department had "retaliated against [him] by being in breach of the . . . mediation agreement."

### The Pleadings

In April 2008, Rodriguez filed a complaint for damages against the department under FEHA for retaliation, discrimination and harassment based on race, and failure to take all reasonable steps necessary to prevent discrimination and harassment. (Gov. Code, § 12940, subd. (k).) The complaint included allegations of his treatment by the department both before and after the settlement agreement in November 2006.

In January 2009, Rodriguez filed a motion for leave to amend his complaint to allege a cause of action for breach of contract. In support of the motion, Rodriguez's counsel explained that earlier that month, the department's counsel "articulated the [department's] position that any alleged adverse acts taken against Rodriguez prior to the date of the EEOC settlement would be inadmissible since [Rodriguez] ha[d] not alleged breach of contract in his original complaint." Accordingly, Rodriguez sought leave to allege a breach of contract action for the purpose of seeking rescission of the settlement agreement. In the proposed amended complaint, Rodriguez expressly did not seek damages or attorney fees for breach of the settlement agreement, just rescission of the agreement.

The department did not oppose Rodriguez's motion for leave to amend but indicated it intended to file a demurrer to the new cause of action. In April 2009, the trial court sustained the demurrer with leave to amend. In May 2009, Rodriguez filed his second amended complaint, and in July 2009 the trial court overruled the department's demurrer to the cause of action for rescission.

### The Department's Motion To Bifurcate

Meanwhile, also in May 2009, the department filed a motion to bifurcate the trial of Rodriguez's "equitable claim for rescission and his legal claims based upon the Fair Employment and Housing Act." The department relied on Code of Civil Procedure sections 592 and 1048, subdivision (b) to support his motion.[1]

Rodriguez opposed the bifurcation motion on the ground (among others) that bifurcation would "require two trials involving the same set of facts."

Exhibit 5 Page 70

On June 4, the trial court denied the motion to bifurcate as premature, without prejudice to the department moving to bifurcate in front of the trial judge once the case was assigned for trial.

On January 4, 2010, the case was assigned for trial to Judge David De Alba. That same day, the department once again filed a motion to bifurcate "so that [Rodriguez]'s purported rescission cause of action is heard and decided by the Court prior to any jury trial of [his] remaining [FEHA] claims." Once again, the department relied on section 592 and subdivision (b) of section 1048. Once again, Rodriguez opposed the motion.

Following extended oral argument, the trial court denied the motion to bifurcate, concluding that "the question of whether there was a breach of the contract is one that should be addressed [by] the jury if for no other reason because of the duplicity of testimony that would be presented to this Court" if the rescission claim were bifurcated from the FEHA claims. The court expressed "no doubt that it would take multiple days, if not a week, to resolve the issue of whether there was a breach or not, and then the subsequent issue of whether rescission is proper or not." The court also noted that Rodriguez might "be entitled to offer as relevant evidence matters that occurred before November 3rd of 2006 either on a theory of a continuing violation of a work place practice and/or in support of the fourth cause of action of the . . . [d]epartment['s] failure to correct any pre-existing discriminatory and/or retaliatory practices, and possibly under the mandate of Evidence Code section 1101(b) as prior acts that may have some relevance or circumstantial proof of intent to discriminate and/or retaliate." Ultimately, the trial court concluded there were "multiple reasons why a bifurcated proceeding would not be economical and would not prevent any acts that occurred before November 3rd, 2006 from being produced or introduced before the jury." The court expressed its belief that "whether there was, in fact, a breach, whether rescission is proper in equity and how damages if any should be apportioned could properly be the subject of a special verdict form," and the court stated it was "prepared to take under submission the equitable question of whether rescission is a proper remedy pending the jury's resolution of the factual issue of whether there's a breach in the first instance."

Thereafter, the court addressed the department's motion in limine to exclude evidence or argument regarding any act or omission predating the settlement agreement and the settlement agreement itself. The court denied that motion for the same reasons it denied the motion to bifurcate, noting, "The subject of a settlement agreement and its breach is a material fact for the jury to resolve."

*Trial And Verdict*

The case was tried to a jury over 14 days in January and February 2010. The trial court instructed the jury on retaliation; race-based harassment; failure to prevent race-based harassment, discrimination, and/or retaliation; and breach of contract.

The jury was presented with an eight-page special verdict form. In answering the questions on that form, the jury determined that the department retaliated against Rodriguez for his complaints of discrimination or retaliation or for his assistance to others who filed EEOC complaints, that the department failed to take reasonable steps to prevent discrimination, retaliation, or harassment of Rodriguez, and that these actions or omissions were substantial factors in causing harm to Rodriguez. The jury further determined, however, that the department did not discriminate against or harass Rodriguez based on his race.

The only question on the verdict form related to breach of contract was whether the department breached a material term of the mediation settlement agreement, which the jury answered "yes." As a result of the answer, the jury was directed to determine the amount of Rodriguez's damages without

**Exhibit 5 Page 71**

This Document is Provided by Leagle.com

any date restriction. The jury fixed Rodriguez's damages at $248,709 for economic loss and $312,000 for noneconomic loss, for a total of $560,709.

Had the jury determined that the department did *not* breach a material term of the mediation settlement agreement, the jury would have been directed to determine only the amount of Rodriguez's damages "from the [department's] conduct that occurred after November 3, 2006."

On the same day the jury returned its verdict, the trial court prepared and entered a "Judgment on Verdict" in the amount the jury awarded, "with interest thereon at the rate of ten percent per annum."[2] Two weeks later, when the parties returned to court to address the rescission issue, the department's attorney stated that he wanted to be heard on the "issue [of] the amount of interest assigned to the judgment," because the department believed it should be 7 percent. The court determined that issue would have to be raised by "a different motion" and was "not . . . today before the Court."

### The Rescission Hearing

The court then proceeded with the hearing on the issue of rescission. The department argued that the court needed to rule on the department's equitable defenses to Rodriguez's rescission claim and make a determination as to whether Rodriguez could indeed rescind the settlement agreement. The department further argued that the judgment that had been entered on the jury's verdict was "entered in error before we had a final resolution of this outstanding issue" and "needs to be modified accordingly depending on how the Court rules."

Lengthy argument followed on the rescission issue. The department expressed the position that Rodriguez could not rescind the settlement agreement and was limited to the recovery of monetary damages. Eventually, the trial court asked why it could not "just declare there is no option for rescission here." The department agreed that would be a "proper finding." The court then asked Rodriguez's counsel whether Rodriguez was "seeking . . . any form [of] rescission now that the jury has definitively declared breach," and she said, "[n]o." After further discussion, Rodriguez's counsel repeated that Rodriguez was no longer seeking the equitable remedy of rescission. The court then determined that the department's equitable defenses to rescission were moot because there was no longer any equitable claim before the court.

### The Motion For Attorney Fees

In March 2010, Rodriguez moved for an award of $645,534 in attorney fees under the FEHA. The amount he requested was based on the application of a multiplier of 1.5, which he applied to a lodestar amount of $430,356. The lodestar amount was based on 46.8 hours of paralegal work at $70 per hour (total $3,276) and 1,067.7 hours of attorney work at $400 per hour (total $427,080).[3]

In opposing the motion, the department argued (among other things) that: (1) the lodestar amount should be reduced by one-third for the time Rodriguez's attorney spent on the nonFEHA rescission claim; and (2) the court should not apply a multiplier but instead should exercise its discretion to adjust the lodestar amount downward.

In reply, Rodriguez argued there should be no reduction for the work on the rescission claim because "the breach of contract had to be presented to the jury to prove adverse acts were taken against [him] and [the department]'s retaliatory animus."

The trial court granted Rodriguez's fee motion without reduction. On the issue of fees related to the breach of contract/rescission cause of action, the court concluded that "[a]ll the claims were

**Exhibit 5 Page 72**

related" and "[t]he related nature of the claims leads to a reasonable conclusion that the work performed would have been necessary just for the retaliation claims." The court also concluded that use of a 1.5 multiplier was "warranted" because of "the contingent risk undertaken by counsel," the "difficult and novel issues that presented an immense challenge to [Rodriguez]'s counsel," "counsel's skills and time involved in handling difficult, novel and risky issues," and "the impact this case has had on the hiring and promotional policies within the [d]epartment . . . and more particularly the Bureau of Narcotic Enforcement." The department timely appealed from the fee award.

### The Amended Judgment

Following the court's award of attorney fees, Rodriguez's counsel apparently submitted a proposed judgment on special verdict to the court that, among other things, specified that postjudgment interest would accrue at 10 percent. The department filed an objection to this proposed judgment on the ground that "under the law . . . the post-judgment interest rate applicable to judgments against public entities is 7 percent, not 10 percent."

A week later, the court filed an amended judgment that encompassed both the damages awarded by the jury and the attorney fees awarded by the court. (Whether this was the proposed judgment Rodriguez's counsel had submitted is not clear from the record.) On the last page, the judgment provided that interest would accrue on the award of damages at the rate of "10 percent per annum" and separately provided that interest would accrue on the award of attorney fees at "10 percent per annum." With respect to the interest on the attorney fees, however, the court struck the figure "10" and wrote in its place "7." The court did not make a similar change to the interest rate on the award of damages.[4]

## DISCUSSION

### I

### Breach Of Contract

The department contends the jury's verdict on Rodriguez's breach of contract cause of action must be reversed for four reasons. First, the department contends (essentially) that the breach of contract cause of action never should have gone to the jury in the first place because the trial court should have sustained the department's demurrer to that cause of action on the ground it was barred by Rodriguez's failure to comply with the Government Claims Act.[5] Second, the department asserts the trial court erred in refusing to bifurcate the trial so as to decide the equitable issue raised by the breach of contract cause of action — rescission — before the trial of Rodriguez's claims under the FEHA. Third, the department asserts the trial court erred in instructing the jury on the breach of contract cause of action. Fourth, the department contends the jury's verdict on the breach of contract cause of action was not supported by substantial evidence that the department breached the settlement agreement.

As we have noted, all of these arguments are aimed at showing why the jury's verdict on the breach of contract cause of action must be reversed. Even if the department is correct in any of its claims of error, however, it makes no difference because the department suffered no prejudice as a result of the jury's verdict on the breach of contract cause of action.

As we have previously explained, Rodriguez did not seek damages on his breach of contract cause of action; the sole remedy he sought with respect to that cause of action was rescission of the

Exhibit 5 Page 73

settlement agreement.[6] Thus, the jury was not presented with a complete breach of contract cause of action, as such, and did not render a verdict on that cause of action. Instead, the jury was instructed on breach of contract only so that it could render an advisory verdict on the question of whether the department breached the settlement agreement. Assuming the jury answered that question in the affirmative (as it did), the trial court was then to make the equitable decision on whether Rodriguez was entitled to rescind the agreement. In the end, however, before the trial court made that decision, Rodriguez relinquished his request to rescind the agreement. Thus, the jury's advisory verdict on the question of breach ultimately was without consequence, and therefore any error leading up to that verdict could not have resulted in prejudice to the department.

Of course, to the extent the department raises the denial of its motion to bifurcate as a basis for reversing the jury's verdict on Rodriguez's cause of action for retaliation, that presents a distinct question that *is* cognizable on appeal, because the jury ended up awarding Rodriguez $560,709 in damages for retaliation, and if the trial court's ruling on the bifurcation motion was error, the department may have suffered prejudice as a result of that error in connection with the jury's verdict on that cause of action. Accordingly, we will address that issue below. But because the jury's advisory verdict on the issue of breach did not directly lead to any money judgment or other relief against the department, we need not consider whether the trial court should have sustained the department's demurrer to the breach of contract cause of action, whether the trial court erred in instructing the jury on breach of contract, or whether there was substantial evidence to support the jury's finding that the defendant breached the settlement agreement.

II

*Denial Of The Motion To Bifurcate*

The department contends the trial court prejudicially erred in denying the motion to bifurcate because the department was entitled to have the issue of rescission decided before Rodriguez's FEHA claims and the department was prejudiced by this ruling because in the absence of bifurcation Rodriguez was able to offer evidence regarding the claims he released in the settlement agreement and recover damages for the department's conduct predating the settlement agreement without first rescinding the agreement.

As we will explain, the trial court did not abuse its discretion in denying the department's request to bifurcate the trial. First, the settlement agreement did not entitle the department to exclude all evidence of the settlement agreement and what happened before it, as long as the preagreement evidence was relevant for a purpose other than proving damages for conduct that predated the settlement, which the trial court concluded it was. Also, the department did not need two distinct phases of trial to prevent Rodriguez from recovering damages for conduct that predated the settlement agreement while that agreement remained in effect. It would have sufficed if the jury had been asked to decide the predicate issue of breach, then the jury's deliberations had been suspended while the trial court decided whether Rodriguez was entitled to rescind the settlement agreement (assuming the jury found for Rodriguez on the issue if breach). Once the trial court decided the issue of rescission, the jury then could have resumed its deliberations to decide liability and (potentially) damages on Rodriguez's FEHA claims, with the scope of its determination determined by whether Rodriguez was permitted to rescind the settlement agreement. That did not happen, however, because the special verdict form that was used skipped the step of allowing the trial court to resolve the issue of rescission *before* the jury decided liability and damages. But the department does not complain about the special verdict form on appeal, and therefore any claim of error regarding that form has been forfeited. With this overview in mind, we turn to the trial court's ruling on the bifurcation

Exhibit 5 Page 74

motion.

"Whether there shall be a severance and separate trials on issues in a single action is a matter within the discretion of the trial court, whose ruling will not be disturbed on appeal absent a manifest abuse of discretion." (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086.) "A trial court abuses its discretion when its decision exceeds the bounds of reason by being arbitrary, capricious or patently absurd." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.)

The department first argues that the trial court was required to bifurcate the trial of the rescission claim from the trial of the FEHA claims because under case law a plaintiff is forbidden from litigating claims that have been released in a settlement agreement before the agreement has been rescinded. As we will explain, however, the cases on which the department relies do not support its argument that the trial court *had* to bifurcate the trial in this case.

The department first cites *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913. In that case, the plaintiff insured entered into a compromise settlement of a claim against its property insurer related to damage sustained in the 1994 Northridge earthquake. (*Id.* at p. 918.) Subsequently, the insured sued the insurer for breach of contract, asserting that the insurer "committed fraud in the inducement in the settlement and release process by misrepresenting policy limits." (*Id.* at pp. 919, 921.) "Throughout the litigation, [the insured] insisted that it did not seek to rescind the settlement agreement and that it did not intend to do so. Instead, . . . it wanted to bypass the rescission requirements to affirm the release and to seek additional damages." (*Id.* at p. 919.)

The trial court sustained the insurer's demurrer without leave to amend, concluding the insured could not affirm the settlement agreement and keep the money paid in the settlement without releasing its additional claims. (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co., supra,* 50 Cal.4th at p. 920.) On review, the Supreme Court agreed that "the rules governing rescission of settlement release agreements require the parties to follow the statutory and common law rescission procedures before suing for damages." (*Ibid.*)

Because the plaintiff in *Village Northridge* sought to avoid altogether its obligation to rescind the settlement agreement before suing for damages based on claims released in the agreement, the Supreme Court had no occasion in that case to speak to the situation presented here, where the plaintiff sought to rescind a settlement agreement but combined his suit for rescission with a legal action for damages that encompassed, but did not consist entirely of, the claims released in the settlement agreement. "As is well established, a case is authority only for a proposition actually considered and decided therein." (*In re Chavez* (2003) 30 Cal.4th 643, 656.) Thus, *Village Northridge* does not establish that it was an abuse of discretion for the trial court here to deny the department's motion to bifurcate trial of the rescission claim from trial of the FEHA claims.

In the next case the department cites — *Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526 — the plaintiff entered into a written settlement agreement with the defendant disposing of the claims alleged in his complaint, but after accepting and spending the money paid to him pursuant to the settlement, he refused to dismiss the complaint, arguing that the settlement agreement was unenforceable. (*Id.* at pp. 1529, 1530.) The trial court granted summary judgment in favor of the defendant, and the Court of Appeal affirmed, "agree[ing] with the trial court's determination that [the plaintiff]'s failure to make any effort to actually rescind the agreement, specifically including any offer to refund the money he received in consideration of the settlement, preclude[d] his assertion that the agreement could not be relied upon to defeat his claim." (*Id.* at pp. 1529-1530.)

**Exhibit 5 Page 75**

This Document is Provided by Leagle.com

Like *Village Northridge, Myerchin* is distinguishable from the present case. Here, Rodriguez sued for rescission of the settlement agreement. In *Myerchin,* the plaintiff did not. While the plaintiff in *Myerchin* argued that his amended answer to the defendant's cross-complaint — in which he asserted that the settlement agreement was unenforceable — qualified as a pleading seeking rescission, the appellate court disagreed. (*Myerchin v. Family Benefits, Inc., supra,* 162 Cal.App.4th at pp. 1533-1534.) Thus, like the Supreme Court in *Village Northridge,* the Court of Appeal in *Myerchin* had no occasion to address whether bifurcation is required where the plaintiff sues for rescission of a settlement agreement at the same time he sues for damages based in part on claims that were released in the agreement.

None of the other cases the department cites is any more on point because none of them speaks to a situation where (as here) the plaintiff seeks damages for statutory claims and at the same time seeks to rescind a settlement agreement in order to recover damages for conduct that was the subject of the settlement agreement, as well as recovering damages for the conduct that postdated the settlement agreement. In the absence of any case law on point, the department has failed to persuade us that the trial court was obligated to grant the department's motion to bifurcate just because Rodriguez was seeking to rescind the settlement agreement.

The department next contends the trial court erred "when it ignored the weight of the authority [under section 592] advising that equitable issues be tried before legal claims." We disagree.

Section 592 provides that "[i]n actions for the recovery of specific, real, or personal property, with or without damages, or for money claimed as due upon contract, or as damages for breach of contract, or for injuries, an issue of fact must be tried by a jury, unless a jury trial is waived, or a reference is ordered, as provided in this Code. Where in these cases there are issues both of law and fact, the issue of law must be first disposed of. In other cases, issues of fact must be tried by the Court, subject to its power to order any such issue to be tried by a jury, or to be referred to a referee, as provided in this Code."

Citing the second sentence of the statute, the department contends section 592 "requires courts to decide equitable claims before legal claims are presented to a jury" and thus the trial court here was required to decide Rodriguez's rescission claim before his FEHA claims were tried by the jury. The department is mistaken.

Section 592 does not speak directly to the order of trial in a case, like this, that presents both legal claims (the claims for damages under the FEHA) and an equitable claim (the claim for rescission of the settlement agreement). To serve its argument, however, the department deems Rodriguez's rescission claim to be an "issue of law" and his FEHA claims to be an "issue of fact," so that the rescission claim had to be "first disposed of" under the mandate of the statute's second sentence. But case law — even the case law cited by the department — does not support this argument.

Citing *Estate of Fincher* (1981) 119 Cal.App.3d 343, 351, the department properly points out that "'it is settled that a trial court may try equitable issues separately even when legal issues in the case are tried to the jury.'" But the department fails to note the following sentence from *Fincher:* "Nor does it matter that in this case the court determined the equitable issues after the jury tried the legal issues." (*Ibid.*) As the opinion cited in *Fincher* — *Bate v. Marsteller* (1965) 232 Cal.App.2d 605 — explained, "It has been held that where a case contains both questions of law and equity it is the better practice that the trial court determine the equitable issues before submitting the legal ones to the jury. [Citation.] However, this goes to the order of proof and is not jurisdictional. [Citation.] The trial court has power over the order of proof. [Citation.] No prejudice results when the trial court does not make its findings of fact and conclusions of law on the equitable issues until after the jury has brought

**Exhibit 5 Page 76**

in its verdict on the legal issue, where the trial judge has by way of instructions taken from the jury all equitable issues which the jury is not entitled to consider." (*Id.* at p. 617.)

*Bate* makes clear that the trial court was under no obligation to decide Rodriguez's rescission claim before his FEHA claims were tried by the jury. The order of proof was a matter for the trial court's discretion. To the extent the department argues the trial court abused its discretion because the court's refusal to bifurcate the trial "caused severe prejudice to the [d]epartment," we turn to that argument now.

Subdivision (b) of section 1048 provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any cause of action, including a cause of action asserted in a cross-complaint, or of any separate issue or of any number of causes of action or issues, preserving the right of trial by jury required by the Constitution or a statute of this state or of the United States."

The department contends bifurcation "would have promoted judicial economy" because if the trial court had found that Rodriguez was not entitled to rescind the settlement agreement, "Rodriguez would not have been able to offer many significant items of evidence" and thus "the trial . . . would have been dramatically shorter." In arguing this point, however, the department ignores the trial court's determination that, even if the agreement was not rescinded, Rodriguez might "be entitled to offer as relevant evidence matters that occurred before November 3rd of 2006 either on a theory of a continuing violation of a work place practice and/or in support of the fourth cause of action of the . . . [d]epartment['s] failure to correct any pre-existing discriminatory and/or retaliatory practices, and possibly under the mandate of Evidence Code section 1101(b) as prior acts that may have some relevance or circumstantial proof of intent to discriminate and/or retaliate."

"A judgment or order of the trial court is presumed to be correct," and "[i]t is the appellant's burden to affirmatively demonstrate error." (*In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977, 978.) Here, by failing to address the point, the department has failed to carry its burden of demonstrating error in the trial court's determination that the evidence would have been largely the same whether the settlement agreement was rescinded. Thus, this argument provides no basis for finding an abuse of discretion in the trial court's denial of the bifurcation motion.

Beyond the issue of judicial economy, the department contends it was prejudiced by the trial court's refusal to bifurcate the trial because "the Jury heard evidence of damages arising from claims Rodriguez released in the Settlement Agreement even though that Settlement Agreement has never been rescinded." According to the department, "Had the Jury not heard the inflammatory and irrelevant information that was unrelated to the issue of breach, the Jury m[ight] have answered question 19 of the Special Verdict in the negative" — that is, the jury might have found there was no breach.

This argument fails for much the same reason as the previous argument based on judicial economy. While noting the possibility of "undue prejudice to the state," the trial court concluded that bifurcation "would not be economical and would not prevent any acts that occurred before November 3rd, 2006 from being produced or introduced before the jury." Thus, the trial court recognized that even if the trial were bifurcated, the jury would still hear evidence of the department's presettlement agreement conduct and thus bifurcation would not prevent the potential prejudice. By failing to challenge the trial court's determination that the evidence would have been largely the same whether the settlement agreement was rescinded, the department has failed to show abuse of discretion in the trial court's refusal to bifurcate the trial.

Exhibit 5 Page 77

This Document is Provided by Leagle.com

3/8/13 2:49 PM

The department complains that the denial of its motion to bifurcate "allowed [Rodriguez] to recover damages for both released claims and for the breach of the Settlement Agreement itself" and "hopelessly muddled the Jury's assessment of liability and damages in this action." With respect to economic damages, the department argues that the amount the jury awarded ($248,709) was made up of two figures: (1) the $240,649 that Rodriguez's economics expert testified was Rodriguez's harm from not being promoted to Special Agent Supervisor in April 2007, and (2) $8,060, which represented 62 sessions with Rodriguez's psychologist at $130 per session.[7] The department contends "the $8,060 of Rodriguez['s] economic damages that related to his past and future treatment with [his psychologist] was awarded based upon consideration of claims Rodriguez waived in the Settlement Agreement," which "could only be [awarded] if the Settlement Agreement was rescinded," while "the lost wages component of Rodriguez's economic damages award was dependent upon the existence of the Settlement Agreement." Thus, the department contends, "Rodriguez recovered damages based upon inconsistent theories and the verdict on retaliation must be reversed."

There are several flaws in the department's argument. First, an award of damages for the harm Rodriguez suffered from not being promoted in April 2007 was not necessarily "dependent upon the existence of the Settlement Agreement," as the department contends. As the department points out elsewhere, in closing, Rodriguez "identified the alleged breach [of the settlement agreement] as evidence of retaliation." Indeed, Rodriguez specifically identified the "denial of promotions" as "acts of retaliation." Thus, the jury could have determined that the department's refusal to promote Rodriguez in April 2007 was an act of retaliation in violation of the FEHA and awarded Rodriguez damages for that retaliatory action *regardless* of whether the department's denial of that promotion also constituted a breach of the settlement agreement.

Second, the department's assertion that "the $8,060 of Rodriguez['s] economic damages that related to his past and future treatment with [his psychologist] was awarded based upon consideration of claims Rodriguez waived in the Settlement Agreement" is based on pure speculation. While it may be reasonable to conclude the award of economic damages was made up of the $240,649 that Rodriguez's economics expert testified was Rodriguez's harm from not being promoted in April 2007 and the cost of 62 sessions with Rodriguez's psychologist at $130 per session, there is no basis for concluding that the 62 sessions must have included past sessions that would not have been needed except for the department's presettlement agreement conduct, i.e., sessions that were attributable to claims Rodriguez released in the settlement agreement. The psychologist testified that it would be beneficial for Rodriguez to have further treatment with her for "probably a year and a half to two years, preferably weekly." Weekly sessions for two years would amount to 104 sessions. Thus, it is entirely possible that if the award of economic damages included money for 62 therapy sessions, as the department posits, *all* of those sessions could have been *future* sessions that the jury concluded were necessary because of retaliation the department engaged in *after* the settlement agreement. In other words, the department has failed to establish that the jury's award of damages necessarily was based on claims Rodriguez released in the settlement agreement.

To the extent it was possible for the jury to award damages to Rodriguez based on presettlement agreement claims and postsettlement agreement claims (regardless of whether that actually happened), the trial court did not have to bifurcate the trial to avoid that possibility. Instead, as the court recognized, that possibility could be eliminated with a special verdict form that allowed the jury to resolve "the factual issue of whether there's a breach in the first instance," with the court then determining "the equitable question of whether rescission is a proper remedy." If the jury determined there was a breach, but the court determined Rodriguez was not entitled to rescind the settlement agreement, or if the jury determined there was *no* breach, and therefore no basis for Rodriguez to rescind, the jury could have been directed to determine whether the department had engaged in

Exhibit 5 Page 78

This Document is Provided by Leagle.com

conduct prohibited by the FEHA after the settlement agreement and, if so, what were Rodriguez's damages from that conduct. If, on the other hand, the jury determined there was a breach and the court determined Rodriguez *was* entitled to rescind the settlement agreement, then the jury could have been directed to determine whether the department had engaged in conduct prohibited by the FEHA at *any* time and, if so, what were Rodriguez's damages from that conduct.

It is true the special verdict form actually used here did not achieve this goal of allowing the jury to determine liability and damages for presettlement agreement conduct only *after* the trial court determined that Rodriguez was entitled to rescind the settlement agreement, but that was a result of a faulty special verdict form, not the trial court's refusal to bifurcate the trial. The department, however, has not asserted any error in the verdict form, and thus any such claim of error has been forfeited.

In summary, then, the department has failed to show that the trial court acted arbitrarily, capriciously, or outside the bounds of reason in refusing to bifurcate the trial into distinct phases addressing first Rodriguez's rescission claim and then his FEHA claims. To the extent it was possible for the jury to have awarded Rodriguez damages for claims that predated the settlement agreement, the department has not shown that the jury in fact did so, and in any event that possibility was a result of a faulty special verdict form that the department has not challenged on appeal rather than a result of the trial court's refusal to bifurcate the trial. Accordingly, we reject the department's claim of error in the trial court's denial of the bifurcation motion.[8]

III

### Failure To Prevent Cause Of Action

The department contends that subdivision (k) of Government Code section 12940[9] "does not create a separate actionable tort or private cause of action" and therefore "the Jury verdict finding for Rodriguez" on his "'Failure to Prevent' cause of action" must be reversed. We disagree.

First, the department fails to point to any part of the trial court proceedings where it raised this issue. Thus, the department has failed to identify any claim of trial court error on this point that was preserved for appellate review.

Even assuming some such claim of error was properly before us, however, the department fails to identify any prejudice that it suffered. Under the special verdict form presented to the jury, the jury decided that the department *retaliated* against Rodriguez but did not discriminate against him or harass him based on his race. The jury also determined that the department's retaliation was a substantial factor in causing harm to Rodriguez. The jury then determined that the department failed to take reasonable steps to prevent discrimination, *retaliation,* or harassment against Rodriguez and that failure was also a substantial factor in causing harm to Rodriguez. Because the jury found that the department did not discriminate against or harass Rodriguez, it is reasonable to infer that the jury's conclusion on the "failure to prevent" cause of action related solely to the department's failure to take reasonable steps to prevent the *retaliation* the jury found Rodriguez suffered. Thus, the jury's award of damages to Rodriguez was for the department's retaliation against Rodriguez and for the department's failure to take reasonable steps to prevent that retaliation.

Even assuming for the sake of argument that the failure to take reasonable steps to prevent retaliation is not actionable separate and apart from the underlying retaliation, the department fails to explain how allowing the jury to premise its award of damages in this case on the failure to prevent the retaliation as well as on the retaliation itself could have resulted in any prejudice to him. So far as we can discern, the measure of damages would have been the same in any event. At the very least,

Exhibit 5 Page 79

the department fails to show otherwise. Accordingly, the department has not persuaded us of any error on this point.

IV

*Attorney Fees*

"The FEHA provides that `the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs . . . .' (Gov. Code, § 12965, subd. (b).) In determining the fee award, the trial court must first determine `a "lodestar" or "touchstone" figure, which is the product of the number of hours worked by the attorneys and a reasonable fee per hour.' [Citations.] The trial court then has the discretion to increase or reduce the lodestar figure by applying a positive or negative `"multiplier"' based on a variety of factors. [Citations.] We review the trial court's decision on attorney fees under an abuse of discretion standard." (*Greene v. Dillingham Construction N.A., Inc.* (2002) 101 Cal.App.4th 418, 422.) "The `"experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong."'" (*Ketchum v. Moses* (2002) 24 Cal.4th 1122, 1132.)

A

*Fees For The Rescission Claim*

On appeal, the department first contends the trial court should have reduced the lodestar amount to account for the work done on the rescission claim. The department argues that "[n]o statute allows for recovery of fees for the pursuit of Rodriguez's purported rescission cause of action," which was not based on the FEHA, and "Rodriguez specifically disclaim[ed in his complaint] that he was seeking attorney fees based upon his purported rescission cause of action."

"Where a lawsuit consists of related claims, and the plaintiff has won substantial relief, a trial court has discretion to award all or substantially all of the plaintiff's fees even if the court did not adopt each contention raised." (*Downey Cares v. Downey Community Development Com.* (1987) 196 Cal.App.3d 983, 997.) "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. [Citation.] When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133.)

Here, the trial court specifically found that "[a]ll the claims were related" and "[t]he related nature of the claims leads to a reasonable conclusion that the work performed would have been necessary just for the retaliation claims." In other words, the trial court essentially concluded that it would be impossible to identify services that Rodriguez's attorney provided solely on the issue of rescission that were not also related to the retaliation claims on which Rodriguez was awarded damages. This conclusion makes particular sense when it is understood that the reason Rodriguez was seeking rescission in the first place was to increase the scope of the department's actions on which he could recover damages for retaliation. Under these circumstances, Rodriguez's rescission claim was inextricably intertwined with the FEHA retaliation claims on which he prevailed, and the trial court

**Exhibit 5 Page 80**

acted well within its discretion in determining that there should be no reduction for work attributable to the rescission claim.

<div align="center">B</div>

<div align="center">*The Multiplier*</div>

The department next contends the trial court abused its discretion in applying a multiplier to the lodestar amount. We disagree.

"In FEHA cases, the trial court has the discretion to apply a multiplier or fee enhancement to the lodestar figure to take into account a variety of factors, including the quality of the representation, the novelty and difficulty of the issues presented, the results obtained and the contingent risk involved. [Citations.] In *Ketchum v. Moses*[, *supra*,] 24 Cal.4th [at page] 1132 . . ., a SLAPP (strategic lawsuit against public participation) action, our Supreme Court explained that the purpose of a multiplier 'is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved *a contingent risk or required extraordinary legal skill* justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services. . . . [¶] . . . [The multiplier] for contingent risk [brings] the financial incentives for attorneys enforcing important constitutional rights . . . into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.' (Italics added.) The court further noted that applying a fee enhancement does not inevitably result in a windfall to attorneys: 'Under our precedents, the unadorned lodestar reflects the general local hourly rate for a *fee-bearing case;* it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider . . . . The adjustment to the lodestar figure, e.g., to provide a fee enhancement reflecting the risk that the attorney will not receive payment if the suit does not succeed, constitutes earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather, it is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees.'" (*Greene v. Dillingham Construction N.A., Inc., supra,* 101 Cal.App.4th at pp. 426-427, fn. omitted.)

Here, the department has not persuaded us that it was clearly wrong for the trial court to apply a multiplier of 1.5 in determining the reasonable value of the services Rodriguez's counsel provided on a contingency fee basis.

The department first argues that "[t]he primary claim upon which Rodriguez prevailed — retaliation — does not involve any particularly novel or difficult questions." The department does concede that "novel and difficult issues" were "involved [in] Rodriguez's contract cause of action for rescission," but the department asserts that "Rodriguez abandoned the rescission claim post-verdict" and "[i]n any event, . . . he cannot recover fees for this non-FEHA claim."

We have concluded already that Rodriguez's rescission claim was inextricably intertwined with the FEHA retaliation claims on which he prevailed, so the latter part of the department's argument is without merit. As for the fact that Rodriguez ultimately declined to pursue his rescission claim to completion — resting instead on the damages award he achieved in the absence of rescission — it remains true that Rodriguez prevailed in establishing breach of the settlement agreement. Under these circumstances, the department has not shown it was clearly wrong for the trial court to determine that "difficult and novel issues that presented an immense challenge to [Rodriguez]'s counsel" were a factor that weighed in favor of a multiplier.

The department next argues a multiplier was not appropriate because "Rodriguez's counsel was

**Exhibit 5 Page 81**

able to litigate this case while undertaking representation of others in their own cases." But the trial court did not rely on this factor in approving the multiplier, so the department's showing that this factor was not present is without value.

Relying on *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, the department contends that a multiplier was inappropriate because "Rodriguez's counsel assumed no greater risk than any other contingency lawyer" and in fact "assumed less risk in light of the fee-awarding provisions of FEHA."

In *Weeks*, the appellate court noted that the contingent nature of a fee award in a case under FEHA is not the same as in a case that results in no fund of money from which attorney fees might be paid nor in any monetary recovery by the plaintiff and in which the plaintiff's attorney must rely on the public attorney general theory to recover a fee award, because in that class of cases "it [i]s uncertain that the attorneys w[ill] be entitled to an award of fees even if they prevail[]." (*Weeks v. Baker & McKenzie, supra,* 63 Cal.App.4th at p. 1175.) In a FEHA case, on the other hand, "Government Code section 12965, subdivision (b) create[s] a reasonable expectation that attorney fees w[ill] not be limited by the extent of [the plaintiff's] recovery and that [the plaintiff's] attorneys w[ill] receive full compensation for their efforts. The contingent nature of the litigation [in a FEHA case], therefore, [i]s the risk that [the plaintiff will] not prevail. Such a risk is inherent in any contingency fee case and is managed by the decision of the attorney to take the case and the steps taken in pursuing it." (*Ibid.*)

To the extent the *Weeks* court downplayed the significance of the contingent nature of a fee award in a FEHA case as a basis for applying a multiplier, we find that court's discussion inconsistent with our Supreme Court's later discussion of the contingency factor in *Ketchum v. Moses, supra,* 24 Cal.4th at page 1132, set forth above. The Supreme Court has explained that the continent nature of a fee award weighs in favor of a multiplier because the multiplier is intended to approximate market-level compensation for services provided on a contingency fee basis by including a premium for the risk of nonpayment and/or delay in payment. Thus, the fact that Rodriguez's attorney may have "assumed no greater risk than any other contingency lawyer" does not weigh against the application of a multiplier.

The department next argues that a multiplier was not justified because the burden of the award in the case will fall on the "the taxpaying public." We do not disagree that this factor weighs against the application of a multiplier. The department has not shown, however, that this factor alone demonstrates that the trial court was clearly wrong in deciding a multiplier was appropriate here. Moreover, to the extent the department asserts that the multiplier here "will result in reduced narcotics enforcement" in particular, the department cites no evidence in support of that assertion.

Finally, the department contends a multiplier was inappropriate because, under *Weeks,* "fee enhancements under FEHA are appropriate only in cases where a broad public interest is served by the litigation," which was (in the department's view) not the case here. Unlike the department, we do not read the decision in *Weeks* to require that FEHA litigation serve a "broad public interest" in order for a multiplier to be appropriate. Indeed, the portions of the *Weeks* opinion the department cites in support of its argument did not involve the question of whether a finding of "public interest" is required to make a multiplier appropriate in a FEHA case. Instead, they involved: (1) a discussion of why fee recovery was not appropriate in that case under the private attorney general theory (*Weeks v. Baker & McKenzie, supra,* 63 Cal.App.4th at p. 1170), and (2) a discussion of "[t]he classic situation justifying an upward adjustment of the lodestar figure," where "[t]he litigation resulted in no fund of money from which attorney fees might be paid, nor did it result in any monetary recovery by the plaintiffs" (*id.* at pp. 1173-1174).

Exhibit 5 Page 82

In any event, even assuming some kind of result inuring to the "public interest" were required to justify application of a multiplier in a FEHA case, the department fails to explain why "the impact this case has had on the hiring and promotional policies within the [d]epartment . . . and more particularly the Bureau of Narcotic Enforcement," as found by the trial court, was not sufficient to meet that criterion.

In the end, only one of the factors on which the department relies — impact on the public fisc — weighed against the application of a multiplier here. As we have explained, however, the department has not shown that this factor alone demonstrates that the trial court was clearly wrong in deciding a multiplier was appropriate here.

V

*Postjudgment Interest*

The department contends the amended judgment "must be corrected to reflect the appropriate rate of interest [on the award of damages], which is 7% and not 10%" because public entities are subject to only the lesser rate. Rodriguez contends that the 10 percent rate is correct because that is what is provided for in section 685.010, subdivision (a), and the cases the department cites apply only to "localpublic entities." On this point the department is correct.

In *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 344, the California Supreme Court addressed whether "interest on a judgment against a local public entity accrue[s] at the postjudgment interest rate of 10 percent per annum prescribed by section 685.010, subdivision (a), . . . or at the rate of 7 percent per annum, pursuant to article XV, section 1, of the California Constitution." The court explained that "Government Code section 970.1, subdivision (b), provides that a judgment against a local public entity is 'not enforceable under Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure.'" (*California Fed. Savings,* at p. 347.) Noting that section 685.010, subdivision (a) (the 10 percent interest provision) was part of Title 9 of Part 2 of the Code of Civil Procedure, the court concluded that by the operation of Government Code section 970.1, the 10 percent postjudgment interest rate in section 685.010, subdivision (a) was not applicable to judgments against local entities and instead, "[i]n the absence of a legislative provision setting the rate of interest for claims against public entities, the constitutional rate of 7 percent per annum applies." (*California Fed. Savings,* at pp. 352-353.)

Although *California Fed. Savings* involved a judgment against a local public entity, and not a judgment (as here) against a state agency, the reasoning of the Supreme Court in that case applies with equal force to a judgment against a state agency because there is a provision exactly like Government Code section 970.1, subdivision (b) that applies to state agencies. Specifically, Government Code section 965.5, subdivision (b) provides that "[a] judgment for the payment of money against the state or a state agency is not enforceable under Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure . . . ." Accordingly, under the force of the reasoning in *California Fed. Savings,* the constitutional rate of 7 percent, and not the statutory rate of 10 percent, applies to the judgment against the department. Indeed, the trial court apparently recognized this when it corrected the 10 percent figure applicable to the award of attorney fees to 7 percent; it appears to have been a mere oversight that the trial court did not also correct the figure applicable to the award of damages.

DISPOSITION

The amended judgment entered April 29, 2010 is modified to provide for interest on the award of

Exhibit 5 Page 83

This Document is Provided by Leagle.com

damages at the rate of 7 percent per annum, and, as modified, the judgment is affirmed. Rodriguez shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

RAYE, P. J. and HOCH, J., concurs.

---

# Footnotes

1. Further section references are to the Code of Civil Procedure unless otherwise noted.
Back to Reference

2. The department timely appealed this judgment.
Back to Reference

3. In his motion, Rodriguez claimed he was seeking fees for 1,064.2 hours of attorney work already performed, and he anticipated an additional 5.5 hours would be needed on posttrial matters. Net of the $3,276 in fees he was seeking for paralegal work, however, the lodestar amount that he claimed amounted to $427,080, which actually equals 1,067.7 hours of attorney work at $400 per hour.

In granting Rodriguez all of the fees he requested, the trial court found that "1064.2 attorney hours [were] reasonable" but refused to "award the amounts 'anticipated' for post trial motions." In so ruling, the court apparently failed to recognize that the lodestar amount Rodriguez claimed was based on 1,067.7 hours of attorney work rather than the 1,064.2 hours the court found were reasonable. But because the department did not raise this issue on appeal, we decline to order any modification of the attorney fee award based on this apparent error.
Back to Reference

4. The department did not file a notice of appeal from this amended judgment, but that makes no difference because if the department's previously filed notices of appeal were premature with respect to the amended judgment, we must treat them as having been filed immediately after entry of that judgment. (See Cal. Rules of Court, rule 8.104(d)(1).)
Back to Reference

5. The department apparently did not demur to Rodriguez's causes of action under the FEHA on this ground because "[a]ctions brought under the [FEHA] have . . . been held exempt from the claim-presentation requirements of the general tort claims act." (Garcia v. Los Angeles Unified School Dist. (1985) 173 Cal.App.3d 701, 710.)
Back to Reference

6. It is true Rodriguez pursued rescission as a remedy for breach of contract because he wanted to eliminate the settlement agreement and thereby increase the damages he could claim for the department's alleged FEHA violations by seeking damages for all of the department's conduct, rather than just the conduct that postdated the settlement agreement. It remains true nonetheless that Rodriguez was not seeking damages for breach of the settlement agreement; he was seeking damages for discrimination, harassment, and retaliation, and the breach of contract cause of action was simply a means by which he could increase the amount of damages he could claim on the other causes of action.
Back to Reference

7. Rodriguez's psychologist testified she had had "at least 36 hour long sessions" with him and that it would "[a]bsolutely" be beneficial for him to continue treatment. The difference between 62 and 36 is 26. Thus, it is possible the jury's award of economic damages was made up the damages to Rodriguez from not being promoted in April 2007, plus the cost of the 36 therapy sessions he had had to date, plus the cost of biweekly therapy sessions for another year.
Back to Reference

8. To the extent the department purports to separately argue that the trial court erred in denying the department's motion in limine to exclude evidence or argument regarding any act or omission predating the settlement agreement and the settlement agreement itself, we reject that argument for the same reasons (set forth above) that we have rejected the department's argument regarding the bifurcation motion.
Back to Reference

9. This statute requires an employer to take all reasonable steps necessary "to prevent discrimination and harassment from

Exhibit 5 Page 84

occurring."

Back to Reference

Exhibit 5 Page 85

## AFFIDAVIT AND DECLARATION OF PROOF OF SERVICE

1

2      I am over the age of eighteen years and not a party to the within action. I am
employed by Gladstone Michel Weisberg Willner & Sloane, ALC, whose business
3   address is: 4551 Glencoe Ave., Suite 300, Marina del Rey, California 90292 ("the
firm").

4      On March 14, 2013, I served the within document(s) described as:
5   **DEFENDANT AIRCRAFT SERVICE INTERNATIONAL, INC.'S NOTICE
OF REMOVAL [DIVERSITY]** on the interested parties in this action:

6   ☐    by placing ☐ the original ☐ true copy(ies) thereof enclosed in sealed
7        envelope(s)
        ☐ addressed as follows: ☐ addressed as stated on the attached mailing list.
8

9   RONALD L. ZAMBRANO, ESQ.
LAW OFFICES OF CARLIN & BUCHSBAUM, LLP
10  555 East Ocean Blvd., Suite 818
Long Beach, CA  90802

11  ☒   **BY MAIL** (C.C.P. § 1013(a))—I deposited such envelope(s) for processing in
the mail room in our offices. I am "readily familiar" with the firm's practice
12  of collection and processing correspondence for mailing. It is deposited
with the U.S. Postal Service on that same day with postage thereon fully
13  prepaid at Marina del Rey, California, in the ordinary course of business. I
am aware that on motion of a party served, service is presumed invalid if
14  postal cancellation date or postage meter date is more than one day after the
date of deposit for mailing in affidavit.
15

16  ☐   (State) I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.
17  ☒   (Federal) I declare that I am employed in the office of a member of the bar
of this Court at whose direction the service was made.
18

19  Executed on March 14, 2013, at Marina del Rey, California.

20

21  *Elaine Miyashiro*
ELAINE MIYASHIRO

22

23

24

25

26

27

28

GLADSTONE MICHEL
WEISBERG WILLNER & SLOANE, ALC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Fernando M. Olguin and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

### CV13- 1846 FMO (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

------------------------------------------------------------

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

MARIAN ZAWADA

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

AIRCRAFT SERVICE INTERNATIONAL, INC.

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Ronald L. Zambrano, Esq.      (562) 432-8933
Law Offices of Carlin & Buchsbaum, LLP
555 East Ocean Blvd., Suite 818
Long Beach, CA 90802

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Teresa R. Tracy, Esq.      (310) 821-9000
Gladstone Michel Weisberg Willner & Sloane
4551 Glencoe Ave., Suite 300
Marina del Rey, CA 90292

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ not specified

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Diversity, 28 U.S.C. sections 1441 and 1446.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☒ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number: CV13-01846

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Florida; Virginia |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Ernest May_   DATE: March 14, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |